[No. A101244. First Dist., Div. One. Feb. 25, 2004.]

HARRY K. VERNON, Plaintiff and Appellant, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Law Office of Paul Kleven and Paul Kleven for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Randall P. Borcherding and Kristian D. Whitten, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**SWAGER, J.**—The trial court sustained the demurrer of the State of California (hereafter respondent or the State) without leave to amend, and entered judgment against appellant in his action for employment discrimination (Gov. Code, § 12940), violation of civil rights (42 U.S.C. §§ 1981, 1983), and declaratory relief. Appellant argues that he is entitled to maintain his causes of action even without a direct employment relationship with respondent. We conclude that the State is not subject to liability to appellant, and affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Appellant alleged in his first amended complaint that he is "an African-American male" who has been employed as a firefighter by the City of Berkeley (hereafter the City or Berkeley) since February of 1978. During his years as a firefighter, appellant has been afflicted with a chronic, hereditary "dermatological disorder" called psuedofolliculitis barbae, which occurs "exclusively in African-American males," and causes facial hairs to "curl back into the facial skin." Treatment of psuedofolliculitis barbae requires "cessation of shaving," among other therapy, to avoid the pain and disfigurement otherwise caused by the condition. Thus, upon the recommendation of the attending physician selected by Berkeley, appellant wore "a short beard during the performance of his employment" duties to alleviate the symptoms of his psuedofolliculitis barbae condition.

Appellant and other firefighters are often required to wear a respirator known as a Self-Contained Breathing Apparatus (SCBA) while fighting fires. According to the complaint, neither appellant nor any other of his fellow employees in the Berkeley Fire Department experienced any incident "of a SCBA leaking due to a firefighter's visible facial hair." And "on numerous occasions" when he was fit tested with an SCBA, appellant invariably met or exceeded the performance standards for respirator leak tests. Between 1984 and 1999, Berkeley permitted appellant and other firefighters to wear facial hair "without incident or adverse consequence while actively engaged in fire suppression" duties.

In October of 1999, Berkeley "implemented a new Respiratory Protection Policy" that prohibited any person "who had visible facial hair" from taking an SCBA mask fit test. The effect of the policy was to preclude any employee with facial hair from working "in fire suppression." The new Berkeley Respiratory Protection Policy was allegedly necessitated by "FED-OSHA" and "CAL-OSHA" regulations enacted in 1997 which "specifically prohibit the use or testing of SCBA respirators by employees with visible facial hair."[1]

---

[1] See California Code of Regulations, title 8, section 5144, which provides in pertinent part: "(g) Use of respirators. This subsection requires employers to establish and implement procedures for the proper use of respirators. These requirements include prohibiting conditions that may result in facepiece seal leakage, preventing employees from removing respirators in hazardous environments, taking actions to ensure continued effective respirator operation throughout the work shift, and establishing procedures for the use of respirators in IDLH atmospheres or in interior structural firefighting situations.

"(1) Facepiece seal protection.

"(A) *The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have*:

The complaint asserts that Berkeley has "requested a variance" from the state regulations on grounds of racial and gender discrimination, but "CAL-OSHA has failed and refused to grant a variance" despite authority to do so. As a result of the CAL-OSHA regulations and the failure to obtain a variance, Berkeley has removed appellant "from his position as a firefighter in fire suppression" and terminated him from his employment position.

Appellant has alleged that the CAL-OSHA regulations implemented by Berkeley have a "discriminatory racial impact" upon "African-American males throughout the entire State of California," without any "business necessity for said regulation and said enforcement." He further asserts that respondent "knowingly promulgated and enforced" the CAL-OSHA regulations which "are discriminatory on the basis of race, color, ancestry, medical condition and physical condition," and have an "adverse impact" upon African-American males who suffer from psuedofolliculitis barbae, in violation of the provisions of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900, et seq.).[2] The complaint adds that the State refused to grant appellant "reasonable accommodations" from his "physical disability" by denying Berkeley's request for a "temporary or permanent variance" from the discriminatory CAL-OSHA regulations. Also included in the complaint are causes of action for denial of civil rights (42 U.S.C. § 1981 et seq.), and declaratory relief.[3]

The trial court sustained the State's demurrer to the first amended complaint without leave to amend on grounds that the State was neither an employer of appellant nor an aider and abettor in any discriminatory employment practices. This appeal followed.

## DISCUSSION

Appellant's causes of action against the State challenge the enactment and enforcement of CAL-OSHA regulations that preclude the use or testing of SCBA respirators by employees with visible facial hair. He complains that application of the regulations to him and other African-American employees afflicted with the psuedofolliculitis barbae condition violates the FEHA as a

---

"1. *Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function*; or

"2. Any condition that interferes with the face-to-facepiece seal or valve function." (Italics added.)

[2] All further California statutory references are to the Government Code unless otherwise indicated.

[3] According to the pleading, on April 10, 2001, appellant filed a complaint for discrimination, harassment and retaliation with the California Department of Fair Employment and Housing, and was issued a "right to sue" letter which granted him authority to proceed with this action (§§ 12940, 12965, subd. (b)).

discriminatory employment practice. Appellant acknowledges that the City rather than the State is his "direct employer." He argues that based upon his allegations that the State has "thoroughly dictated the City's employment, policies" through the adoption of mandatory employment regulations and the refusal to grant an exemption to his direct employer, liability for the discriminatory effect of the CAL-OSHA regulations may be imposed upon the State as an indirect or joint employer under section 12940, subdivisions (a) and (d) even without a "direct employment relationship." He also maintains that the State "is liable under the FEHA not only as an indirect employer, but also under section 12940, subdivision (i)," as an "aider and abettor of the discrimination." Finally, appellant submits that he has stated a claim for declaratory relief despite the lack of a direct employment relationship with the State.

## I. Respondent's Claim of Mootness.

Respondent contends that appellant's action has been rendered moot by the "experimental variance" granted to the City by the State's Department of Industrial Relations pursuant to Labor Code sections 6451 and 6452, which exempts operation of the challenged CAL-OSHA regulations until at least six months after August of 2003. Respondent argues that with the variance in place appellant is not foreclosed from wearing SCBA respirators or performing his employment duties as a firefighter for the City. Therefore, respondent claims "this action is moot."

" 'As a general rule, "an appeal presenting only abstract or academic questions is subject to dismissal as moot." [Citation.]' (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1621 [267 Cal.Rptr. 746].)" (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547 [30 Cal.Rptr.2d 10].) "It is this court's duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. . . ." ' [Citations.]" (*Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 921 [45 Cal.Rptr.2d 1]; see also *Hebert v. Los Angeles Raiders, Ltd.* (1991) 23 Cal.App.4th 414, 421 [29 Cal.Rptr.2d 540].) " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citations.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 [130 Cal.Rptr.2d 564].) " ' "It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the

court will not proceed to a formal judgment, but will dismiss the appeal." ' [Citations.]" (*Chantiles v. Lake Forest II Master Homeowners Assn., supra,* at p. 921; see also *People v. DeLong* (2002) 101 Cal.App.4th 482, 486 [124 Cal.Rptr.2d 293]; *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1193 [23 Cal.Rptr.2d 878].)

■ We do not consider the present appeal moot due to the issuance of an experimental variance that has provisionally granted the City an exemption from the regulatory prohibition against employees with facial hair wearing SCBA respirators. Appellant may still obtain effectual relief from this court with a favorable ruling in this action. If we declare the CAL-OSHA regulations invalid as discriminatory, appellant will not need to rely upon additional, speculative variances that may or may not be granted to the City in the future. Furthermore, even if an action is moot, pursuant to established exceptions an appellate court may nevertheless exercise discretion to address the merits of an appeal if there may be a recurrence of the controversy between the parties or the case presents an issue of broad public interest that is likely to recur. (See *White v. Davis* (2003) 30 Cal.4th 528, 537 [133 Cal.Rptr.2d 648, 68 P.3d 74]; *Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479–480 [98 Cal.Rptr.2d 202]; *In re Robert A.* (1992) 4 Cal.App.4th 174, 182 [5 Cal Rptr. 2d 438].) The record before us does not indicate that the variance is other than temporary. Thus the constitutional issues of public interest presented by the case may recur between these parties or others, and we decline to find that appellant has raised only moot points. (See *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 171–172 [126 Cal.Rptr.2d 727, 56 P.3d 1029]; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198]; *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *Guardians of Elk Creek Old Growth v. Department of Forestry & Fire Protection* (2001) 89 Cal.App.4th 1431, 1433–1434 [108 Cal.Rptr.2d 259].) [4]

II. *The Liability of the State as an Indirect or Joint Employer.*

We turn to the merits of the trial court's ruling on the demurrer. " 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer

---

[4] We were also advised during oral argument that appellant has now retired from the City of Berkeley Fire Department. We nevertheless find that the case falls within the mootness exception for an issue of public interest that is likely to recur, and decline to dismiss the appeal as moot.

as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]' [Citation.]" (*Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 352 [118 Cal.Rptr.2d 443].) "The task of the reviewing court, therefore, 'is to determine whether the pleaded facts state a cause of action on any available legal theory.' [Citation.] Where, as here, a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 266 [130 Cal.Rptr.2d 601]; see also *Kadish v. Jewish Community Centers of Greater Los Angeles*\* (Cal.App.).) The burden is on appellant " 'to demonstrate that the trial court abused its discretion and to show in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings. [Citations.]' [Citation.]" (*McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1023–1024 [67 Cal.Rptr.2d 516].)

We proceed with our examination of the liability of the State to appellant from the fundamental premise articulated in section 815 "that '[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.' The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception. ' "Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable." ' [Citations.]" (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1202 [84 Cal.Rptr.2d 496].)

The crucial inquiry in the present case is whether the State may be liable to appellant under the statutory provisions of the FEHA for allegedly discriminatory adoption and enforcement of employment regulations that govern use of respirators by employees with facial hair. "FEHA establishes a civil right to be free from job discrimination based on certain classifications including race and sex." (*Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 227 [116 Cal.Rptr.2d 770], fn. omitted.) "Under the FEHA and its predecessor statutes, freedom from employment discrimination on the grounds of race, religious creed, color, national origin, ancestry, physical

---

\*Reporter's Note: Review granted December 23, 2003, S120631; review dismissed August 11, 2004.

disability, mental disability, medical condition, marital status, and sex is a civil right. (Gov. Code, § 12921.) Discrimination on the specified grounds is against public policy (§ 12920) and an unlawful employment practice (§ 12940)." (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1323–1324 [58 Cal.Rptr.2d 308], fn. omitted.)

" 'Because the FEHA is remedial legislation, which declares "[t]he opportunity to seek, obtain and hold employment without discrimination" to be a civil right (§ 12921), and expresses a legislative policy that it is necessary to protect and safeguard that right (§ 12920), the court must construe the FEHA broadly, not . . . restrictively. Section 12993, subdivision (a) directs: "The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof." If there is ambiguity that is not resolved by the legislative history of the FEHA or other extrinsic sources, we are required to construe the FEHA so as to facilitate the exercise of jurisdiction by the [Fair Employment and Housing Commission]. [Citation.]' [Citation.]" (*Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1114 [95 Cal.Rptr.2d 514, 997 P.2d 1169].)

"The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination. (§ 12940, subd. (a).)"[5] (*Reno v. Baird* (1998) 18 Cal.4th 640, 644 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) The FEHA predicates potential "liability on the status of the defendant as an 'employer.' (§ 12926.)" (*Kelly v. Methodist Hospital of So. California, supra,* 22 Cal.4th 1108, 1116.) The fundamental foundation for liability is the "existence of an *employment* relationship between the one who discriminates against another and that other who finds himself the victim of that discrimination." (*Hill v. New York City Bd. of Educ.* (E.D.N.Y. 1992) 808 F.Supp. 141, 146.) FEHA requires "some connection with an employment relationship," although the connection "need not necessarily be direct." (*Lutcher v. Musicians Union Local 47* (9th Cir. 1980) 633 F.2d 880, 883.) "If there is no proscribed 'employment practice,' the FEHA does not apply." (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1135 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)

Also, for purposes of imposition of liability for unlawful employment practices, "[t]he FEHA provides limited definitions of the terms 'employee' and 'employer.' (§ 12926, subds. (c) & (d).)" (*Shephard v. Loyola Marymount*

---

[5] Section 12940 provides that it shall be an unlawful employment practice, "(a) For an *employer*, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Italics added.)

*Univ.* (2002) 102 Cal.App.4th 837, 842 [125 Cal.Rptr.2d 829].) The FEHA defines an employer "as follows: ' "Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the *state* or any political civil subdivision of the state, and cities, except as follows: [¶] "Employer" does not include a religious association or corporation not organized for private profit.' (§ 12926, subd. (d).) The first paragraph of section 12926, subdivision (d) does provide some definition of an employer. But the second paragraph of section 12926, subdivision (d) provides a description of what is not an employer. Beyond these limited definitions, the FEHA does not define an employer, employee, or what constitutes employment. In order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee." (*Shephard v. Loyola Marymount Univ., supra,* at p. 842, italics added; original italics omitted; see also *Reno v. Baird, supra,* 18 Cal.4th 640, 644–645.)

 Appellant is an employee, but not of the State, either directly or indirectly. Although the statutes provide only a nominal definition of "employer," and the cases have defined the term with "magnificent circularity," pursuant to the allegations of appellant's first amended complaint the State does not fall within the scope of the definition under any recognized test or standards. (See *Broussard v. L.H. Bossier, Inc.* (5th Cir. 1986) 789 F.2d 1158, 1160; *Hill v. New York City Bd. of Educ., supra,* 808 F.Supp. 141, 146.)[6] The various designated tests adopted by the courts to determine the existence of an employer/employee relationship have articulated many of the same or similar governing standards, and have " 'little discernible difference' " between them. (*Lambertsen v. Utah Dept. of Corrections* (10th Cir. 1996) 79 F.3d 1024, 1028; see also *Folkerson v. Circus Circus Enterprises, Inc.* (9th Cir. 1997) 107 F.3d 754, 756; *Wilde v. County of Kandiyohi* (8th Cir. 1994) 15 F.3d 103, 106; *Frankel v. Bally, Inc.* (2d Cir. 1993) 987 F.2d 86, 90.) The common and prevailing principle espoused in all of the tests directs us to consider the "totality of circumstances" that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties. (*Lambertsen v. Utah Dept. of Corrections, supra,* at p. 1028; *Jeffries v. Deloitte Touche Tohmatsu Intern.* (E.D.Pa. 1995) 893 F.Supp. 455, 459.)[7] "There is

---

[6] " ' "Because the antidiscrimination objectives and relevant wording of title VII of the Civil Rights Act of 1964 (Title VII) [(42 U.S.C. § 2000e et seq.)] [and other federal antidiscrimination statutes] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA." ' [Citation.]" (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812 [111 Cal.Rptr.2d 87, 29 P.3d 175].) We will do so here in defining the term "employer."

[7] The courts have "wrestled with the appropriate test to be applied" to determine whether a defendant is an employer for purposes of an action for discriminatory employment practices.

no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze 'myriad facts surrounding the employment relationship in question.' [Citation.] No one factor is decisive. [Citation.]" (*Choe-Rively v. Vietnam Veterans of America* (D.Del. 2001) 135 F.Supp.2d 462, 470; see also *Graves v. Lowery* (3rd Cir. 1997) 117 F.3d 723, 729.) "[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." (*Graves v. Lowery, supra*, at p. 729.)

■ Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment. (*Community for Creative Non-Violence v. Reid* (1989) 490 U.S. 730, 751–752 [104 L.Ed.2d 811, 109 S.Ct. 2166]; *Broussard v. L.H. Bossier, Inc., supra*, 789 F.2d 1158, 1159; *Spirides v. Reinhardt* (D.C.Cir. 1979) 613 F.2d 826, 832 [198 U.S. App. D.C. 93]; *Hatcher v. Augustus, supra*, 956 F.Supp. 387, 390; *Goudeau v. Dental Health Services, Inc., supra*, 901 F.Supp. 1139, 1142; *Jeffries v. Deloitte Touche Tohmatsu Intern., supra*, 893 F.Supp. 455, 458–459; *Ali v. L.A. Focus Publication* (2003) 112 Cal.App.4th 1477, 1485 [5 Cal.Rptr.3d 791].) " 'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' [Citation.]" (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 351 [256 Cal.Rptr. 543, 769 P.2d 399], fn. omitted.)

(*Hatcher v. Augustus* (E.D.N.Y. 1997) 956 F.Supp. 387, 389.) At least four tests have been widely recognized and given names by the courts: the traditional common law test of "agency;" the "interference test," which examines the authority of the defendant to affirmatively interfere with or adversely affect the plaintiff's access to employment opportunities; the "economic realities" test; and the "hybrid test," which combines elements of the other tests. (See *Lambertsen v. Utah Dept. of Corrections, supra*, 79 F.3d 1024, 1027–1028; *Sibley Memorial Hospital v. Wilson* (D.C.Cir. 1973) 488 F.2d 1338, 1342 [160 U.S. App. D.C. 14]; *Gulino v. Board of Educ., City of New York* (S.D.N.Y. 2002) 236 F.Supp.2d 314, 331–332; *Williams v. Caruso* (D.Del. 1997) 966 F.Supp. 287, 295; *Hatcher v. Augustus, supra*, at pp. 389–390; *Goudeau v. Dental Health Services, Inc.* (M.D.La. 1995) 901 F.Supp. 1139, 1142; *Hill v. New York City Bd. of Educ., supra*, 808 F.Supp. 141, 147.) We will not adhere to one particular test, but rather as other courts have done we will examine the totality of the working relationship of the parties. (*Lambertsen v. Utah Dept. of Corrections, supra*, at pp. 1028–1029.)

"Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is the most important." (*Lee v. Mobile County Com'n* (S.D.Ala. 1995) 954 F.Supp. 1540, 1546, affd. 103 F.3d 148; see also *Deal v. State Farm County Mut. Ins. Co. of Texas* (5th Cir. 1993) 5 F.3d 117, 118–119; *Fields v. Hallsville Independent School Dist.* (5th Cir. 1990) 906 F.2d 1017, 1019; *Bampoe v. Coach Stores, Inc.* (S.D.N.Y. 2000) 93 F.Supp.2d 360, 369–370; *E.E.O.C. v. Fawn Vendors, Inc.* (S.D.Tex. 1996) 965 F.Supp. 909, 911; *Goudeau v. Dental Health Services, Inc., supra,* 901 F.Supp. 1139, 1142; *Magnuson v. Peak Technical Services, Inc.* (E.D.Va. 1992) 808 F.Supp. 500, 507.) In all cases, an "employer must be an individual or entity who extends a certain degree of control over the plaintiff." (*Lee v. Mobile County Com'n, supra,* at p. 1545.) The focus of our evaluation of the right to control the plaintiff's work performance is upon "not only the result but also the means by which the result was accomplished." (*Ali v. L.A. Focus Publication, supra,* 112 Cal.App.4th 1477, 1485.) And particularly, the inquiry considers the level of control an organization asserts over an individual's access to employment opportunities. (*Graves v. Lowery, supra,* 117 F.3d 723, 728; *Sibley Memorial Hospital v. Wilson, supra,* 488 F.2d 1338, 1342.) Further, "the control an organization asserts must be 'significant,' [citation], and there must be a 'sufficient indicia of an interrelationship . . . to justify the belief on the part of an aggrieved employee that the [alleged co-employer] is jointly responsible for the acts of the immediate employer.' [Citations.]" (*Choe-Rively v. Vietnam Veterans of America, supra,* 135 F.Supp.2d 462, 470; see also *Graves v. Lowery, supra,* at p. 728; *Armbruster v. Quinn* (6th Cir. 1983) 711 F.2d 1332, 1337.) In determining liability under the FEHA, we look " 'to the degree an entity or person significantly affects access to employment' . . . ." (*Matthews v. Superior Court* (1995) 34 Cal.App.4th 598, 604 [40 Cal.Rptr.2d 350], citation omitted.)

 Here, the State neither compensated appellant nor engaged his services in any way. (See *Haddock v. Board of Dental Examiners of Cal.* (9th Cir. 1985) 777 F.2d 462, 464.) The absence of any direct or indirect remuneration from the defendant to the plaintiff, while not controlling, is at least strong evidence that an employment relationship did not exist. (See *York v. Ass'n of the Bar* (2d Cir. 2002) 286 F.3d 122, 125–126; *Pietras v. Board of Fire Comrs of Farmingville* (2d Cir. 1999) 180 F.3d 468, 473; *O'Connor v. Davis* (2d Cir. 1997) 126 F.3d 112, 115–116; *Scaglione v. Chappaqua Central School Dist.* (S.D.N.Y. 2002) 209 F.Supp.2d 311, 314–315; *Ali v. L.A. Focus Publication, supra,* 112 Cal.App.4th 1477, 1486.)[8]

---

[8] Some cases have declared that a form of direct or indirect compensation paid to the plaintiff by the defendant is a prerequisite to a finding of an employment relationship. (See *York v. Ass'n of the Bar, supra,* 286 F.3d 122, 125; *O'Connor v. Davis, supra,* 126 F.3d 112, 115–116.)

The pleading does not allege that the State hired appellant, set his compensation, or maintained any personnel records for him. (*Walker v. City of Elba, Ala.* (M.D.Ala. 1994) 874 F.Supp. 361, 364.) Appellant and his fellow firefighters were not trained by the State for the highly skilled fire suppression work required to be performed by them for the City. Appellant was directly employed for over 20 years solely by the City, with no direct interference or participation by the State in the employment relationship.

The State also had no apparent authority or discretion to discipline, promote, transfer, or terminate appellant. Nothing in the allegations or record indicates that appellant was covered by personnel policies that specifically govern State employees. Thus, the State did not set appellant's work schedule, determine the specific nature of the daily work he performed, or supervise the execution of his employment duties. Nor has appellant asserted that the State had the means or final authority to control discriminatory practices or policies within the City's Fire Department. (*Lee v. Mobile County Com'n, supra,* 954 F.Supp. 1540, 1545–1546.) According to the allegations of the complaint, the City made the final decision to implement a new respiratory protection policy that prohibited employees with visible facial hair from wearing respirators or taking "a mask fit test." The ultimate control over the means and manner of appellant's employment was exercised separately and exclusively by the City's Fire Department, not the State. (See *Lambertsen v. Utah Dept. of Corrections, supra,* 79 F.3d 1024, 1028–1029; *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 738–739 [80 Cal.Rptr.2d 454].) We find none of the indicia of an employment relationship with the State in the allegations of the first amended complaint. (*Lee v. Mobile County Com'n, supra,* at pp. 1545–1546.)

The only alleged connection between the State and appellant's employment position is the State's enactment of safety regulations that govern his workplace. But the State's CAL-OSHA regulations affect all employers throughout California uniformly, not just appellant's direct employer. To find that the State is appellant's employer within the meaning of FEHA merely by virtue of enactment of regulations that affect the conditions of employment would effectively make the State the potential employer of any person employed by any business that must comply with state law. Nothing in the provisions or rationale of the FEHA suggests such an all-encompassing definition of employer.

The additional allegations that the State enforced the CAL-OSHA regulations with the threat of citations or fines, and declined to grant the City an exemption, fail to properly assert the essential element of an employment relationship. We do not assess the right to control on the basis of enactment and enforcement of legislation. A finding of the right to control employment requires a much more comprehensive and immediate level of

"day-to-day" authority over employment decisions. (See *Laird v. Capital Cities/ABC, Inc., supra,* 68 Cal.App.4th 727, 738.) The "right to control" the employment relationship which is essential to subject the defendant to liability is evaluated by focusing on "an examination of defendant's role with respect to the right to hire, fire, transfer, promote, discipline, set the terms, conditions and privileges of employment, train and pay the plaintiff." (*Lee v. Mobile County Com'n, supra,* 954 F.Supp. 1540, 1545, affd. 103 F.3d 148; see also *E.E.O.C. v. Fawn Vendors, Inc., supra,* 965 F.Supp. 909, 911.) As we read the pleading, the State played no role in appellant's job training, direction, supervision, compensation, or evaluation. (See *Williams v. Caruso, supra,* 966 F.Supp. 287, 295–296.) The necessity of compliance by an employee's direct employer with State regulations is not enough to create the requisite employment relationship with the State. (See *Deal v. State Farm County Mut. Ins. Co. of Texas, supra,* 5 F.3d 117, 119; *Mares v. Marsh* (5th Cir. 1985) 777 F.2d 1066, 1069.)

In support of his argument that the State is his indirect employer, appellant relies upon the decisions in two cases: *Assoc. of Mexican-American v. State of California (AMA)* (9th Cir. 2000) 231 F.3d 572, and *Sibley Memorial Hospital v. Wilson (Sibley), supra,* 488 F.2d 1338. "These cases stand for the proposition that an entity may be liable under Title VII even if it is not a direct employer of the plaintiff, if it 'interferes with an individual's employment opportunities with another employer.' [Citations.] In order for such liability to exist, however, the entity must have 'actual "[c]ontrol over access to the job market." ' [Citations.]" (*Wynn v. National Broadcasting Co., Inc.* (C.D.Cal. 2002) 234 F.Supp.2d 1067, 1109.)

In *AMA,* the plaintiffs were a class of Mexican-American, Asian-American, and African-American teachers who challenged California's use of a skills test—which was a prerequisite to employment in the state's public schools—under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (title VII), on the ground that the test had a disparate impact on minorities. (*AMA, supra,* 231 F.3d 572, 577.) The Ninth Circuit found that title VII applied to the State of California, even though it was not the direct employer of the local school district, due to the extreme level of control it exerted over the school district. The State's exercise of not merely its "police power" grounded in the need to protect the public, but also its "proprietary power" to interfere with the plaintiffs' relationship with their prospective direct employers—the school districts—subjected it to liability under title VII. (*AMA* at p. 584; see also *Gulino v. Board of Educ., City of New York, supra,* 236 F.Supp.2d 314, 331–333.) The court emphasized: "Our conclusion is dictated by the peculiar degree of control that the State of California exercises over local school districts. In California, public schools are 'a matter of statewide rather than local or municipal concern; their establishment, regulation and

operation are covered by the [state] constitution and the state Legislature is given comprehensive powers in relation thereto.' [Citation.] The California legislature 'has plenary authority over the education of California's youth.' [Citation.] It is 'well settled that the California Constitution makes public education uniquely a fundamental concern of the state' and that 'the degree of supervision . . . retained by the State over the common school system is high indeed.' [Citation.] [¶] The state's involvement is not limited to general legislative oversight but, rather, affects the day-to-day operations of local public schools. 'Unlike most states, California school districts have budgets that are controlled and funded by the state government rather than the local districts.' [Citation.]" (*AMA, supra,* at p. 581; see also *York v. Ala. State Bd. of Educ.* (M.D.Ala. 1983) 581 F.Supp. 779; *Allen v. Alabama State Bd. of Educ.* (M.D.Ala. 2000) 190 F.R.D. 602; *United States v. State of North Carolina* (E.D.N.C. 1975) 400 F.Supp. 343; *Morgan v. Hennigan* (D.Mass. 1974) 379 F.Supp. 410; *Georgia Ass'n of Educators, Inc. v. Nix* (N.D.Ga. 1976) 407 F.Supp. 1102.)

In *Sibley,* the defendant hospital operated a nursing office that processed the requests of patients for the services of a private duty nurse. (*Sibley, supra,* 488 F.2d 1338, 1339.) The nursing office contacted various outside referral sources to send a private nurse to the hospital to work with the patient. (*Ibid.*) The referred private nurses were employees of the patient, not the hospital. The plaintiff, a male private nurse, sued the hospital under title VII for its refusal to refer him for employment with female patients. Although the patients, not the hospitals, directly employed the nurses, the court imputed title VII liability to the hospitals. The court found that the hospitals had the authority to "foreclose, on invidious grounds, access by any individual to employment opportunities otherwise available to him." (*Id.* at p. 1341.) The court also noted that the hospitals "control the premises upon which those services were to be rendered, including [plaintiff's] access to the patient for purposes of the initiation of such employment." (*Id.* at p. 1342.)[9]

---

[9] Similarly, in *Gomez v. Alexian Bros. Hosp. of San Jose* (9th Cir. 1983) 698 F.2d 1019, a case on which the *AMA* decision relied, the plaintiff, a Hispanic physician, was permitted to assert a title VII claim against the defendant hospital for interfering with his employment opportunities, although the defendant was not his direct employer. Under a proposal submitted to the hospital by plaintiff's corporate employer, AES, plaintiff was to serve as the director of the hospital emergency room as an employee of AES. (*Id.* at p. 1020.) The defendant rejected the proposal for allegedly discriminatory reasons. (*Id.* at p. 1021.) Again, the complete control exercised by the defendant over the plaintiff's opportunity to be employed by AES as director of defendant's emergency room was the basis for the finding that the hospital was an employer for purposes of title VII liability. (*Id.* at p. 1022.) The court also acted to avoid the perverse result that would occur if an employer in the hospital's position were allowed " 'to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so' " with its own employees. (*Id.* at p. 1021, fn. omitted.)

Neither *AMA* nor *Sibley* support appellant's allegations that the State is liable to him as an indirect employer under the FEHA. "Both cases made it clear that liability for interfering with an individual's employment opportunities requires actual control over access to the job market. Both cases also involved almost absolute control on the part of the state and the hospital, respectively, over the plaintiffs' access to employment." (*Wynn v. National Broadcasting Co., Inc., supra,* 234 F.Supp.2d 1067, 1109–1110.) Further, all of the "cases employing *Sibley's* rationale—and indeed *Sibley* itself—have done so in instances where the indirect employer was the entity performing the discriminatory act. In *Sibley*, it was the hospital which refused to allow the male nurse to see the patient; in *Gomez*, it was the hospital that refused to hire the company with Hispanic doctors; and in *Association of Mexican-American Educators*, it was the state that required applicants to take a test with disparate impacts on minorities." (*Anderson v. Pacific Maritime Ass'n* (9th Cir. 2003) 336 F.3d 924, 931.)

Here, in contrast, appellant has not alleged that the State directly interfered with employment opportunities or access to the job market in the City's Fire Department. The State adopted and enforced safety regulations, but did not actively engage in the hiring or rejection of prospective employees, as did the hospitals in *Sibley* and *Gomez*. Nor did the State exercise the kind of "peculiar" plenary authority and supervision over the daily operations and funding of the Fire Department as it did over local school districts in *AMA*. The allegations of appellant's complaint indicate that the State acted in its more traditional and limited regulatory role by exerting "general legislative oversight" of workplace safety. (*AMA, supra,* 231 F.3d 572, 581.) The Cal-OSHA regulations represent exercise of only the police power of the State, not any proprietary power over the daily operations of the business of appellant's direct employer. (See *Fields v. Hallsville Independent School Dist., supra,* 906 F.2d 1017; see also, *George v. New Jersey Bd. of Veterinary Med. Exam.* (3d Cir. 1986) 794 F.2d 113; *Haddock v. Board of Dental Examiners of Cal., supra,* 777 F.2d 462; *Woodard v. Virginia Bd. of Bar Examiners* (4th Cir. 1979) 598 F.2d 1345; *Tyler v. Vickery* (5th Cir. 1975) 517 F.2d 1089; *United States v. New York State Dept. of Motor Vehicles* (E.D.N.Y. 2000) 82 F.Supp.2d 42, 49–52.) And while the State demanded compliance with the Cal-OSHA regulations, as it does with any legislation, implementation was directly undertaken by the City, which ultimately determined the means and manner of discipline and the nature of other enforcement mechanisms within the Fire Department. (*Anderson v. Pacific Maritime Ass'n, supra,* 336 F.3d 924, 931.) The decisive control of appellant's employment was exercised by the City rather than the State. (*Lambertsen v. Utah Dept. of Corrections, supra,* 79 F.3d 1024, 1028–1029.)

Finally, we perceive no contravention of the policies of the FEHA if the State is not considered appellant's employer. Appellant may still effectively

challenge the application of the State's CAL-OSHA regulations to him in his action for discriminatory employment practices and declaratory relief against his direct employer. Thus, the need to extend liability to the State to further the objective of the FEHA to prevent employment discrimination does not exist. (*Wynn v. National Broadcasting Co., Inc., supra*, 234 F.Supp.2d 1067, 1110–1111.)

■ Nothing in the first amended complaint alleges that the State exerted the actual control over access to the job market or employment opportunities required to be subject to liability under the FEHA. (See *Anderson v. Pacific Maritime Ass'n, supra*, 336 F.3d 924, 931; *Wynn v. National Broadcasting Co., Inc., supra*, 234 F.Supp.2d 1067, 1109–1110.) We therefore conclude that the State is not an employer of appellant.

III. *The Liability of the State as an Aider and Abettor.*

Appellant also argues that the State may be liable to him, if not as an "employer," as an "aider and abettor" under section 12940, subdivision (i), which provides that it is an unlawful employment practice for "*any person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden" by the FEHA, or "to attempt to do so." (Italics added; see also *Reno v. Baird, supra*, 18 Cal.4th 640, 655.) Appellant's position is that the State aided and abetted a discriminatory employment practice by the City which eventually resulted in his termination.

■ "The FEHA does not provide a definition of 'aiding and abetting.' It is appropriate, therefore, to consider the common law definition of aiding and abetting. 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.' [Citations.] Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. (Cf. CALJIC No. 3.01.) 'As a general rule, one owes no duty to control the conduct of another . . . .' [Citations.]" (*Fiol v. Doellstedt, supra*, 50 Cal.App.4th 1318, 1325–1326, fn. omitted.) The "aid and abet" language of section 12940, subdivision (i) " 'makes it unlawful, for example, for third parties such as customers or suppliers to induce or coerce prohibited discrimination or harassment.' " (*Reno v. Baird, supra*, 18 Cal.4th 640, 655.)

■ Liability for aiding and abetting a discriminatory employment practice under the FEHA is also imposed by section 12940, subdivision (i) only

upon a "person." (*Matthews v. Superior Court, supra,* 34 Cal.App.4th 598, 603–604.) The term "person" is in turn defined in section 12925, subdivision (d) to include "one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." Moreover, the discrimination provisions of the FEHA "apply only to employers." (*Reno v. Baird, supra,* 18 Cal.4th 640, 660.) "[I]ndividuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (*Id.* at p. 663.) "In *Reno v. Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333], our Supreme Court determined that the California Fair Employment and Housing Act, section 12900 et seq. (FEHA), imposed liability for unlawful discrimination only on the employer, and not on individuals acting for the employer. The court pointed out that FEHA draws a distinction between harassment and discrimination. Section 12940, subdivision (j)(1), prohibits 'an employer . . . or any other person' from harassing an employee. Subdivision (a), however, prohibits only 'an employer' from engaging in improper discrimination. (*Reno,* at pp. 644–645.) The court determined that individual managers were not liable under FEHA in spite of language defining an 'employer' to include 'any person acting as an agent of an employer.' [Citations.]" (*LeVine v. Weis* (2001) 90 Cal.App.4th 201, 212–213 [108 Cal.Rptr.2d 562]; see also *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1241 [121 Cal.Rptr.2d 806].)

■ We conclude that liability cannot be imposed upon the State under the aiding and abetting provisions of the FEHA for several reasons. We have already found that the State was not appellant's employer and thus cannot be liable to him for unlawful discrimination; nor is the State a "person" as defined in section 12940, subdivision (i). The State, although explicitly designated as a potential "employer" in section 12926, subdivision (d), is not listed as a "person" in section 12925, subdivision (d). We think the most reasonable interpretation of the statutory scheme is that if the Legislature had intended to include public agencies in the definition of parties who may be liable as "persons" under section 12925, subdivision (d), it would have expressly done so. (See *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 73 [108 Cal.Rptr.2d 715]; *State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421, 427 [78 Cal.Rptr.2d 88].) We find support for our position in *Trinkle v. California State Lottery, supra,* 71 Cal.App.4th 1198 where the court was required to construe the definition of "persons" within the provisions of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). Business and Professions Code section 17201 defines "person" for the purposes of the unfair competition law—in a manner similar to section 12925, subdivision (d)—to "mean and include natural persons, corporations,

firms, partnerships, joint stock companies, associations and other organizations of persons." The court in *Trinkle* concluded that the State "is not a 'person' within the meaning of the [UCL]." (*Trinkle v. California State Lottery, supra,* at p. 1203.) It declared: "Words of a statute must be given their ordinary meaning and receive a commonsense construction. [Citation.] The state is neither a natural person, partnership, corporation, association, nor other 'organization[] of persons.' It is a sovereign entity representing the people. Only through an unreasonable, strained construction can the state be deemed to fall within any of the statute's definitional categories." (*Ibid.*) Governmental entities such as the State "are not included in this definition of person." (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 831 [80 Cal.Rptr.2d 549].)

Further, appellant's first amended complaint does not contain any allegations that the State aided and abetted the City in effectuating discriminatory employment practices. Under the FEHA, " 'Aiding and abetting occurs when one helps another commit a prohibited act. [Citation.] The concept of aiding and abetting involves two separate persons, one helping the other.' " (*Reno v. Baird, supra,* 18 Cal.4th 640, 655–656, quoting from *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 77 [53 Cal.Rptr.2d 741].) Nothing in appellant's pleading asserts that the State and the City acted jointly to implement the new respiratory protection policy. The first amended complaint alleges that the State enacted and demanded enforcement of the CAL-OSHA regulations, and as a result the City thereafter implemented a new policy that prohibited employees with visible facial hair from testing or using SCBA respirators. In fact, according to the pleading the City opposed the CAL-OSHA regulations. Appellant's action alleges a discriminatory practice that was caused by two separate entities acting independently, not assisting one another.

 Appellant's first amended complaint fails to properly allege that the State is his employer or may be liable to him as an aider and abettor under the FEHA. We also conclude that there is no reasonable possibility the pleading defect can be cured by amendment, and thus the trial court did not abuse its discretion by sustaining the demurrer without leave to amend. (See *Kern v. City of Rochester* (2d Cir. 1996) 93 F.3d 38, 47.) The sixth cause of action for declaratory relief fails for lack of any actual, justiciable controversy between the parties. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79–80 [124 Cal.Rptr.2d 519, 52 P.3d 695]; *Jones v. Daly* (1981) 122 Cal.App.3d 500, 511 [176 Cal.Rptr. 130].)[10]

---

[10] Appellant's fifth cause of action for deprivation of his civil rights (42 U.S.C. §§ 1981, 1983) is not at issue in this appeal.

Accordingly, the judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 2004.