WERDEGAR, J.,
Dissenting. — I write separately to express my disagreement with the majority’s application of the law to the facts of this case.
The California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; hereafter FEHA) makes employers liable for sexual harassment (§ 12940, subd. (j)(1), (4)(A)). Thus, as the majority recognizes, plaintiff Taylor Patterson may recover from defendant Domino’s Pizza, LLC (Domino’s), on her statutory claim of sexual harassment (Gov. Code, § 12940, subd. (j))[1] if Domino’s did something to become a joint employer with its franchisee Daniel Poff (doing business as Sui Juris, LLC), of Poff’s employees. Because the FEHA’s statutory definition of “employer” is essentially tautological (§ 12940, subd. (j)(4)(A) [“ ‘employer ’ means any person regularly employing one or more persons” (italics added)]), a court properly looks to the common law for guidance, bearing in mind “the spirit and letter of the law that it [is] interpreting” (Bradley v. Department of Corrections & Rehabilitation (2008) 158 Cal.App.4th 1612, 1626-1627 [71 Cal.Rptr.3d 222] (Bradley), citing Metropolitan Water Dist. v. Superior Court (2004) 32 Cal.4th 491, 504 [9 Cal.Rptr.3d 857, 84 P.3d 966]).[2]
The common law offers various definitions of employment. Consequently, courts in FEHA cases have found “no magic formula for determining whether the requisite employment relationship exists. The prevailing view is to consider the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee’s performance of employment duties.” (Bradley, supra, 158 Cal.App.4th at p. 1626, citing Vernon v. State of California (2004) 116 Cal.App.4th 114, 124-125 [10 Cal.Rptr.3d 121] (Vernon).) The majority, offering its own synthesis of the common law, asks whether the alleged employer “has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee’s employees.” (Maj. opn., ante, at p. 478, citing Vernon, at p. 124.)
*505 Fidelity to a multifactored totality of the circumstances test inevitably means that “ ‘[t]he precise contours of an employment relationship can only be established by a careful factual inquiry.’ ” (Vernon, supra, 116 Cal.App.4th at p. 125.) That a franchisor is not automatically the employer of its franchisee’s employees, irrespective of the details of the parties’ relationship, necessarily follows. So, too, does it follow that a franchisor may under the circumstances of the parties’ relationship in fact be an employer. The outcome depends on the factual inquiry. For example, a franchisor, pursuing its legitimate interest in ensuring that customers enjoy a similar experience in each franchised location, may implement the franchise agreement in various ways, including ways short of day-to-day oversight, to exercise control over employee selection, training, personal appearance, interaction with customers, and compliance with in-store procedures. This retention of control by the franchisor, enforced by regular inspections and the threat that a noncompliant franchisee will be placed in default, presents occasions for the franchisor to act as an employer by forcing the termination of problematic employees. The majority finds that Domino’s successfully walked this tightrope between enforcing contractual standards and becoming an employer by leaving to Poff all decisions about the discharge of his employees, even when cause for discharge existed. Because the case has not been tried, we will never know whether Domino’s succeeded or not. Unlike the majority, I would hold that plaintiff has raised a triable issue of fact.
Asked whether Domino’s area leader Claudia Lee had “ever t[old] you that you needed to fire any employees,” Poff answered “Yes.” Those employees were Dave Knight, a manager who had delivered non-Domino’s food to schools, and Renee Miranda, plaintiff’s alleged harasser. Asked whether Poff rather than Lee had “ultimately ma[d]e the decision to terminate” Knight, Poff answered that he “had to pull the trigger on the termination, but it was very strongly hinted that there would be problems if I did not do so.” Asked “[h]ow was it strongly hinted,” Poff explained that “[t]he area leaders would pull you into your office at the store, for example, and tell you what they wanted. If they did not get what they wanted, they would say you would be in trouble.” In fact, Lee indicated to Poff that not firing Knight might cause Poff to lose his franchise. Lee candidly testified she told Poff that, “ ‘[i]f you have anyone that works for you that is damaging the brand or going to cause you to lose your franchise agreement, that person is not the person you want working for you.’ And I told him, ‘Right now, Dave [Knight] is hurting your franchise.’ ” Poff fired Knight a few weeks later.
This interaction between Poff and Lee provides essential context for their later interaction concerning Miranda. Upon learning of plaintiff’s allegations of harassment against Miranda, Lee told Poff, “You’ve got to get rid of this guy.” Asked how he had answered, Poff testified that his “response always to the area leader was ‘yes’ or Til get it done’ or, you know, ‘Give me a little *506 time.’ I never said ‘no’ intentionally to [Lee].” Poff could not “recall specifically” whether Lee “allude[d] to anything that would happen to [Poff] if [he] didn’t fire Miranda,” but it was hardly necessary for Lee to repeat the warning she had recently given Poff that the failure to follow her wishes concerning the termination of a problematic employee could lead to the loss of his franchise. Consistently with his statement that he “never said ‘no’ ” to Lee, Poff confirmed that he “never t[old] her over the phone or to her face that [he] did not intend to fire Miranda.” A franchisee who did not follow Lee’s suggestions, Poff testified, was “out of business very quickly.” Ultimately, Miranda’s failure to return to work made it unnecessary for Poff to risk the loss of his franchise by refusing Lee’s demand.
Under the common law, “ ‘[p]erhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.’ ” (Burlingham v. Gray (1943) 22 Cal.2d 87, 100 [137 P.2d 9].) While no one factor is determinative, the power to discharge an employee offers “ ‘strong evidence’ ” both of the fact of control and of the ultimate existence of an employment relationship. (Kowalski v. Shell Oil Co. (1979) 23 Cal.3d 168, 177 [151 Cal.Rptr. 671, 588 P.2d 811]; see Borello, supra, 48 Cal.3d at p. 350; Tieberg, supra, 2 Cal.3d at p. 949.) This is because the employer’s power to terminate the employee’s services gives the employer the means of controlling the employee’s activities (see Ayala v. Antelope Valley Newspapers, Inc. (2014) 59 Cal.4th 522, 531 [173 Cal.Rptr.3d 332, 327 P.3d 165]; Malloy v. Fong (1951) 37 Cal.2d 356, 370 [232 P.2d 241]) and because, as a matter of logic, a person’s reservation of the power to terminate another’s employee “is incompatible with the full control of the work by another” (National Auto. Ins. Co. v. Ind. Acc. Com. (1943) 23 Cal.2d 215, 220 [143 P.2d 481], italics added). For these purposes “[i]t is not essential that the right of control be exercised or that there be actual supervision of the work of the [employee].” (Malloy, at p. 370.) “What matters is whether the hirer ‘retains all necessary control’ over its operations.” (Ayala, at p. 531, quoting Borello, supra, at p. 357.)
In summary, if Domino’s relationship with Poff gave it the power to force him to fire his employees, then those employees were subject not just to Poff’s control but also to Domino’s and thus were the employees of both. Viewing the evidence in the light most favorable to plaintiff, as we must when reviewing an order granting a defense motion for summary judgment (McDonald v. Antelope Valley Community College Dist. (2008) 45 Cal.4th 88, 96 [84 Cal.Rptr.3d 734, 194 P.3d 1026]), the record would clearly permit the trier of fact to conclude that Domino’s retained and exercised that power.
As mentioned, my disagreement with the majority is not so much with its statement of the applicable law as with its application of the law to the facts. *507 In concluding Domino’s did not have the power to force Poff to discharge his employees, the majority places too much emphasis on the terms of the franchise agreement and not enough on the parties’ real world interaction. The language of the governing contract is only “one factor to be considered in determining the nature of the employment relationship” and “is not controlling.” (Bradley, supra, 158 Cal.App.4th at p. 1628.) This is because our principal responsibility in FEHA cases is not to give effect to private contracts intended to shift or avoid liability, nor is it to promote the use of franchising as a business model or to avoid “disrupting] the franchise relationship.” (Maj. opn., ante, at p. 498.) Instead, our duty is to vindicate the Legislature’s “fundamental public interest in a workplace free from the pernicious influence of sexism.” (Rojo v. Kliger (1990) 52 Cal.3d 65, 90 [276 Cal.Rptr. 130, 801 P.2d 373]; see Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 224 [152 Cal.Rptr.3d 392, 294 P.3d 49] [same].) When this task requires us to construe FEHA’s definition of employer, we are bound by the Legislature’s command that “[t]he provisions of [FEHA] shall be construed liberally for the accomplishment of [its] purposes . . . .” (§ 12993, subd. (a).) To emphasize contractual language intended to shield a franchisor from employment-related claims over evidence the franchisor in practice retained and exercised the power to terminate the franchisee’s employees tends to undermine FEHA’s goals by permitting the franchisor, in effect, to opt out of the statutory duties of a California employer.
For these reasons, I dissent.
Liu, J., and Chaney, J.,* concurred.
Appellant’s petition for a rehearing was denied September 24, 2014. Werdegar, J., was of the opinion that the petition should be granted.

 All further statutory references are to the Government Code.

 We have followed the same approach in other contexts in which the relevant statute or regulation has defined the employment relationship tautologically, or not at all. (See, e.g., Martinez v. Combs (2010) 49 Cal.4th 35, 64 [109 Cal.Rptr.3d 514, 231 P.3d 259] [wage law]; Metropolitan Water Dist. v. Superior Court, supra, 32 Cal.4th at pp. 500-501 [public retirement law]; S. G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399] (Borello) [workers’ compensation]; Tieberg v. Unemployment Ins. App. Bd. (1970) 2 Cal.3d 943, 949-951 [88 Cal.Rptr. 175, 471 P.2d 975] (Tieberg) [unemployment insurance].)

Associate Justice of the Court of Appeal, Second Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.