Filed 1/7/15  Birnbaum v. Tarzana Anesthesia Med. Group CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARC BIRNBAUM,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TARZANA ANESTHESIA MEDICAL GROUP, INC.,<br><br>        Defendant and Respondent. | B253705<br><br>(Los Angeles County<br>Super. Ct. No. BC513944)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on December 16, 2014, Not for Publication, is hereby modified as follows:

On page 12, delete the second and third sentences in the second full paragraph, stating "Birnbaum stands on these allegations and has not proposed any amendments.[fn] Thus, he has not met his burden on appeal[]"and replace with:

"Birnbaum has not presented any amendments that would cure this pleading defect."

The petition for rehearing contends this court erred in addressing two material facts raised during oral argument that were purportedly offered as amendments to the first amended complaint (complaint).  Upon our review of the oral transcript of the argument,

the first fact, that is, "Birnbaum was required to work exclusively for Medical Group," was raised in argument by Medical Group's counsel, and rebutted by Birnbaum's counsel, but not offered as an amendment. The second fact, stating "independent contractors that worked for [Medical Group] had different terms" than Birnbaum was offered as an amendment, however, when questioned further, Birnbaum's counsel conceded this conclusory fact was specifically alleged as Birnbaum's restrictive vacation schedule, which was a term in the partnership offer executed by Medical Group and Birnbaum. These facts do not cure the pleading defects in the complaint.

The petition for rehearing is denied.

There is no change in the judgment.

Filed 12/16/14 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARC BIRNBAUM, | B253705 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC513944) |
| v. | |
| TARZANA ANESTHESIA MEDICAL GROUP, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed.

Law Offices of Joseph Y. Avrahamy and Joseph Y. Avrahamy for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, John L. Barber and Alexander J. Harwin for Defendant and Respondent.

Plaintiff and appellant Marc Birnbaum, M.D., appeals from a judgment of dismissal in favor of Tarzana Anesthesia Medical Group, Inc. (Medical Group). The trial court sustained without leave to amend Medical Group's demurrer to Birnbaum's first amended complaint (complaint), alleging causes of action under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

The principal issue in this appeal is whether Birnbaum, an anesthesiologist under contract with Medical Group, sufficiently alleged that he was an employee to recover under the FEHA. Based upon our independent review, we conclude that Birnbaum has not sufficiently alleged that he is an employee of Medical Group. Accepting as true the contents of contracts attached as an exhibit to the complaint, no factual allegations sufficiently plead Birnbaum was an employee. Thus, as a matter of law, Birnbaum cannot sue Medical Group for FEHA violations. Accordingly, we affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

A demurrer admits, provisionally for purposes of testing the pleading, all material facts properly pleaded. Accordingly, we draw the facts, which we accept as true, from Birnbaum's complaint and also any facts of which we may take judicial notice. (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218, 1224; see also *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We do not, however, accept the truth of contentions or conclusions of fact or law. (*Blank v. Kirwan*, at p. 318.) To the extent factual allegations conflict with the content of exhibits to the complaint, we rely on, and accept as true, the contents of the exhibits and treat as surplusage allegations as to the legal effect of the exhibits. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)

a. *Birnbaum's Agreements with Medical Group*

Birnbaum is board certified in anesthesiology. He has been practicing medicine since 1991. Birnbaum first contracted with Medical Group in March 2008.[1] He signed two contracts.

(1). *Partnership Offer*

Medical Group and Birnbaum executed a "partnership offer" (Offer). Pursuant to the Offer, Birnbaum would be "evaluated for a two-year probation period," with an annual contract renewal. At the conclusion of the two-year probationary period, a vote to admit Birnbaum into the partnership would be taken. Becoming a partner was not guaranteed and could be withheld without cause.

The Offer listed the criteria for partnership, which included: (1) billing for Birnbaum's services through the Physician's Management Group or other billing service designated by Medical Group; (2) acquiring medical malpractice insurance with CAP-MPT; (3) obtaining board certification by the American Board of Anesthesiology; (4) achieving competency to take OB/GYN call; (5) taking an OB/GYN call slot; (6) obtaining competency in pediatric anesthesia; (7) obtaining staff privileges to perform neonatal anesthesia; (8) obtaining and maintaining unrestricted active staff privileges with Encino/Tarzana Regional Medical Center and any surgery center or physician's office that Medical Group staffs; (9) adhering to Medical Group guidelines related to assigned call duty; (10) adhering to the vacation schedule; and (11) taking call assignments, including up to three weekends of call during an eight-week schedule period or its equivalent, and up to 16 weekdays of night call at any hospital in an eight-week schedule period or its equivalent.

With respect to the vacation schedule, the Offer specifically provides: "[D]uring probation period, [Birnbaum] will receive 20 Pool compensated days of vacation per year (Monday through Friday); he cannot take vacation during summer (week of June 15 –

---

[1] Birnbaum's initial complaint attached these contracts as exhibits, but the contracts were omitted from the amended pleading. We take judicial notice of these exhibits. (Evid. Code, § 452, subd. (d).)

Labor day) unless approved by TAMGI;[2] he cannot take vacation the week before or after Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas, New Years and Easter (school Spring break period) unless approved by TAMGI. If Dr. Birnbaum is not on call on any weekend, regular or holiday, he is free to use the time as he wishes."

At Medical Group's discretion, Birnbaum could be removed from the schedule. Medical Group retained the right to renegotiate the Offer, and any renegotiated agreement required both parties' approval.

(2).    *Non-Shareholder Professional Medical Services Agreement*

As required pursuant to the terms of the Offer, Birnbaum also executed a non-shareholder professional medical services agreement (Agreement). The stated purpose of the Agreement was to "set forth the terms under which Physician [Birnbaum] will provide professional anesthesia services as an independent contractor as scheduled by Corporation."[3]

The Agreement contained a specific provision setting forth Birnbaum's status as an independent contractor. The Agreement provides: "Physician is now, and at all times during the performance of the obligations and objectives of this Agreement shall remain an independent contractor. Corporation shall neither have nor exercise control over the methods by which Physician shall accomplish its professional duties and objectives. . . . [¶] It is understood that no relationship of employer and employee is created by this Agreement, and Physician shall have no claim under this Agreement against Corporation for sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits or employee benefits of any kind."

Any modification of the Agreement had to be reduced to writing and signed by the parties. A clause in the Agreement permitted both parties to terminate the contract without cause.

---

**2**    Medical Group is referred to by the acronym "TAMGI" in the Offer.

**3**    Medical Group is defined as "Corporation" in the Agreement.

4

b. *Birnbaum's Cancer Diagnosis, Treatment, Request for Accommodation*

The complaint alleges that from March 2008 through March 2010, Birnbaum performed his work as an anesthesiologist at an "exceptional level," receiving "accolades and commendations as a result of his performance." During the two-year probationary period, Birnbaum allegedly was told he will " 'likely be voted in as a partner.' " The partnership vote was scheduled for September 2010 but did not occur.

On September 16, 2010, Birnbaum was diagnosed with colorectal cancer. In October 2010, he began medical treatment to treat the cancer, which included surgery followed by chemotherapy. Birnbaum was unable to work from October through December 2010.

In January 2011, Birnbaum returned to work on a part-time basis. Because of a medical condition resulting from his cancer treatment called "anterior resection syndrome," Birnbaum requested a scheduling accommodation in which he would be assigned to surgeries lasting no more than two hours.

In August 2011, Medical Group asked Birnbaum to execute an addendum to the Offer in which the Medical Group agreed to schedule "shorter cases" (Addendum). The Addendum also stated Medical Group would vote in December 2011 and either offer Birnbaum partnership or offer him a temporary position starting in January 2012. Birnbaum did not execute the Addendum.

c. *Medical Group Does Not Make Birnbaum a Partner, the Alleged Disability Discrimination*

In December 2011, Medical Group's shareholders voted and did not make Birnbaum a partner. Birnbaum, however, continued to work for Medical Group through August 2012, with some reduction in his hours. In August 2012, the shareholders again voted and decided not to make Birnbaum a partner. Birnbaum's annual contract was not renewed.[4]

---

**4**     Birnbaum performed services for a fixed term as set forth in the Agreement. Although Birnbaum argues that he was terminated, the citation to the complaint that

5

Based upon these facts, the complaint alleges causes of action for failure to accommodate (Gov. Code, § 12940, subd. (m)) and disability discrimination (*Id.*, subd. (a)). The failure to accommodate cause of action alleges Medical Group did not grant Birnbaum's request to perform anesthesia for surgeries lasting no longer than two hours. The disability discrimination cause of action alleges that following his cancer diagnosis, Medical Group discriminated against Birnbaum by reducing his hours, failing to make him a partner, and terminating his employment because of his medical condition.

### 2. *Superior Court Proceedings, Appeal*

Birnbaum filed his initial complaint for damages on July 2, 2013, after exhausting his administrative remedies. Medical Group filed a demurrer, asserting among other grounds that Birnbaum had not sufficiently alleged he was an employee for purposes of the FEHA. Instead of opposing the demurrer, Birnbaum amended the complaint.

In amending the complaint, Birnbaum alleged as "facts" the terms of the Offer and Agreement. He also added the following factual allegations related to his employment status: (1) Medical Group "was responsible for the costs of operation, such as equipment, supplies, fees, workplace costs and maintenance of operations"; and (2) "Furthermore, in an email dated August 25, 2009, it was acknowledged that based on the structure of TAMGI, all its members are considered employees. The email . . . stated as follows: [¶] 'Everyone, Sit down for a minute, this is a long one. After the meeting with Greg Zinswer, I spoke to his attorney, Jody Root. Root basically told me that given our structure the IRS will consider us employees of TAMGI (instead of independent contractors[)] because 1. TAMGI controls where and when we work, and b. [*sic*] we cannot be considered independent contractors because most of us do not work for any other entity, thus we are beholden to TAMGI for the great bulk of our livelihood." In addition, Birnbaum cited to *Vernon v. State of California* (2004) 116 Cal.App.4th 114

---

supports his argument reads: "Plaintiff realized that he would be terminated from his position."

6

(*Vernon*) and *Vakharia v. Swedish Covenant Hosp.* (7th Cir. 1999) 190 F.3d 799 (*Vakharia*), alleging that based upon factors enunciated in these cases, he is an employee.

Medical Group again filed a demurrer, arguing that Birnbaum did not sufficiently amend to allege facts under *Vernon* to show that he is an employee for purposes of the FEHA. The demurrer was sustained without leave to amend and judgment of dismissal was entered. This timely appeal followed.

DISCUSSION

1. *Standards of Review*

"In 'order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee.' [Citation.]" (*Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, 148.) Our focus here is on whether the court properly concluded the complaint does not sufficiently allege facts that Birnbaum was an employee. The question of whether a complaint sufficiently alleges employment status can be resolved on demurrer. (See *Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 629, 631-637; *Vernon*, *supra*, 116 Cal.App.4th at pp. 121-122, 124-131.)

On appeal from a judgment of dismissal after an order sustaining a demurrer without leave to amend, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.*, *supra*, 25 Cal.4th at p. 415.) When, as here, a court sustains a demurrer without leave to amend, our task on review is to "decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) It is the plaintiff's burden on appeal to show the demurrer was sustained erroneously, or the trial court's denial of leave to amend was an abuse of discretion. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

2. *Law Governing Employment Status Inquiry*

In determining whether Birnbaum is an employee for purposes of the FEHA, there are a number of factors to consider. " 'No one factor is decisive. [Citation.]' [Citations.] '[T]he precise contours of an employment relationship can only be established by a careful factual inquiry.' [Citation.]" (*Vernon*, *supra*, 116 Cal.App.4th at p. 125.)

The *Vernon* factors, referred to as the "totality of circumstances test," "include payment of salary or other employee benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendants to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment."[5] (*Vernon*, *supra*, 116 Cal.App.4th at p. 125.)

Whether employing the totality of circumstances test articulated in *Vernon*, *supra*, 116 Cal.App.4th 114, or the common law agency test used to determine whether an individual is an employee for purposes of title VII of the Civil Rights Act (Title VII) (42 U.S.C. § 2000e et seq.),[6] the right to control the manner and means of the worker's performance is the most important factor. (*Vernon*, *supra*, at p. 126; *Salamon v. Our Lady of Victory Hosp.* (2d Cir. 2008) 514 F.3d 217, 226-227.) If " 'an employer has the

---

[5]     Medical Group argues Birnbaum has failed to allege all the *Vernon* factors. We do not read *Vernon* as setting forth such a pleading requirement. Instead, *Vernon* instructs that not all of these factors are appropriate given the particular professional relationship.

[6]     Because the anti-discrimination objectives and relevant wording of Title VII are similar to those of the FEHA, we often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812.)

8

right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.' [Citations.]" (*Alexander v. Rush North Shore Medical Center* (7th Cir. 1996) 101 F.3d 487, 492-493 (*Alexander*).) "A finding of the right to control employment requires a much more comprehensive and immediate level of 'day-to-day' authority over employment decisions." (*Vernon*, *supra*, at pp. 127-128.) As will be shown, the complaint fails to allege that Medical Group exercised control over Birnbaum when he was performing professional anesthesia services, and any such allegation would contradict the express terms of the Agreement.

3. *Allegations of the* Vernon *Factors*

Birnbaum and Medical Group expressly set out to create an independent contractor relationship during the probationary period when Birnbaum was being considered for partnership. Birnbaum freely negotiated and agreed to the scheduling provisions and other requirements to be considered for partnership as set forth in the Offer and the Agreement. These same contractual terms are now alleged as factors to show Birnbaum is an employee and not an independent contractor as set forth in the Offer and Agreement.

Birnbaum did not receive employment benefits and was required to obtain his own medical malpractice insurance (*Vernon* Factor 1). Birnbaum did not supply his own equipment, but this factor is inherent in the work of an anesthesiologist, whether he is an independent contractor or an employee (*Vernon* Factor 2), thus not necessarily applicable to this particular professional relationship.[7] He also possessed significant specialized skill (*Vernon* Factor 8), and the complaint does not allege that he performed his services under the direction of a supervisor. As for training, hiring, firing, and the duration of the parties' relationship (*Vernon* Factors 4, 5, 11), the professional relationship was governed

---

[7] We liberally construe the allegations in the complaint stating, "Defendant was responsible for the costs of operation, such as equipment, supplies, fees, workplace costs and maintenance of operations."

by mutually-agreed upon contract terms, and based upon the Agreement, either party could terminate the relationship.

The complaint does not specifically allege that Medical Group controlled the manner and means in which Birnbaum carried out his professional services or imposed any requirements upon him in the exercise of his independent discretion concerning the care he delivered to his patients. The only alleged control affected billing patients for his services and obtaining medical malpractice insurance.

Birnbaum contends, however, that he has sufficiently alleged Medical Group controlled the manner and means of his professional services by scheduling when and where he worked (*Vernon* Factors 3, 6), and by contracting for the right to remove him from the schedule (*Vernon* Factor 8). Medical Group's contractual right to schedule Birnbaum's assignments does not concern the performance of his professional services, which remain within his control. (See *Alexander*, *supra*, 101 F.3d at p. 493 ["on call" requirement and scheduling did not establish an employee-employer relationship because, by virtue of the nature of being an anesthesiologist, most of the operating room patients were assigned on a daily basis by the anesthesiology section head and the details of the work remained within the physician's control].)

Citing *Cilecek v. Inova Health System Services* (4th Cir. 1997) 115 F.3d 256, Birnbaum argues our analysis should focus on control over when a doctor performs his services, the number of hours he works, and the administrative details incident to his professional services. (*Id*. at p. 260.) Even when applying this test, the *Cilecek* court concluded the plaintiff, an emergency room physician, was not an employee as a matter of law. Like here, the physician and staffing entity expressly intended to create an independent contractor relationship and, while the physician's hours were scheduled, he contractually agreed to work those hours. (*Id*. at pp. 261-263.) Thus, any control over the physician's schedule was negotiated as part of the agreement to provide professional services as an independent contractor. (*Ibid*.; see also *Vakharia*, *supra*, 190 F.3d at p. 806 [physician could not "point to any specific evidence that would substantiate her claim that [the hospital] exercised close control or call into question the express statement

10

in the [employment] agreement . . . [that she was an independent contractor]"].)**8** In *Cilecek*, the court did not ignore the mutual intent to create an independent contractor relationship. (*Cilecek*, *supra*, at pp. 262-263.) Here, like the physician in *Cilecek*, Birnbaum agreed to the vacation and call schedules as part of his contract to provide professional anesthesia services as an independent contractor. The mutual intent to create an independent contractor relationship was confirmed by the parties in the way they treated taxes and benefits.

Moreover, we are not convinced that the *Cilecek* court's adaptation of the "manner and means of control" factor to narrowly focus on scheduling and staffing concerns in a hospital setting aids in the analysis of whether an anesthesiologist is an employee or independent contractor. Rather, we find instructive *Salamon v. Our Lady of Victory Hosp.*, *supra*, 514 F.3d 217, in which the Second Circuit noted that in the medical practice context, the focus is on the relationship between the parties, and specifically the balance between the employee's judgment and the employer's control. (*Id*. at p. 229.)

In *Salamon v. Our Lady of Victory Hosp.*, *supra*, 514 F.3d 217, a triable issue of fact existed as to the degree of control the hospital exercised over a physician claiming to be a hospital employee, not an independent contractor. (*Id*. at pp. 229-230.) Salamon asserted that the hospital did not merely review her patient treatment outcomes but mandated performance of certain procedures, directed the medications she should prescribe, and recommended changes to her practice. (*Id*. at p. 230.) The hospital's review of Salamon's practice ultimately resulted in a " 'reeducation' program," designed "to expressly change the methods by which she arrived at diagnoses and treatment." (*Id*. at p. 230.) This degree of control over the physician's medical practice precluded a

---

**8**      Birnbaum argues that the analysis in *Alexander* and *Vakharia* should be disregarded because those cases addressed anesthesiologists at hospitals and not an anesthesiologist who worked for a medical group. The distinction is immaterial. Moreover, the procedural posture of these cases does not diminish their value. Each court concluded the undisputed facts established, as a matter of law, that the plaintiff was not an employee for purposes of Title VII. Here, we decide as a matter of law whether Birnbaum has alleged that he is an employee for purposes of the FEHA.

determination as a matter of law that the physician was or was not an employee. (*Id*. at pp. 229-231.)

Here, unlike *Salamon*, there are no allegations that Medical Group controlled any aspect of Birnbaum's performance in rendering anesthesia services to his patients other than to control his scheduling. We accept as true the mutual intent of the parties to establish a professional relationship as expressed in the Offer and Agreement. We conclude there are no factual allegations in the complaint that are contrary to the express intent that Birnbaum agreed to the scheduling provisions in the contracts as a condition of performing his professional services for Medical Group as an independent contractor. In reaching this conclusion, we disregard the content of an e-mail quoting a lawyer's opinion that the "members" of Medical Group are employees for IRS purposes. We accept as true the e-mail exists, but the content of the e-mail expresses a legal conclusion that is disregarded when determining the sufficiency of the complaint.

Finally, we have considered the additional *Vernon* factors, to the extent any apply in this context or have been alleged, and we conclude the complaint does not sufficiently allege that Birnbaum is an employee. Thus, Birnbaum cannot sue Medical Group for FEHA violations. Birnbaum stands on these allegations and has not proposed any amendments.[9] Thus, he has not met his burden on appeal. The trial court properly sustained the demurrer without leave to amend.

---

[9] In his opening brief, Birnbaum states: "[I]f this Court concludes that the FAC is lacking certain facts that can be cured by amendment of the Complaint, Appellant should be provided with an opportunity to amend the FAC." It is Birnbaum's burden to present these allegations to the court, and not the court's obligation to propose amendments to Birnbaum.

DISPOSITION

The judgment of dismissal is affirmed. Respondent Tarzana Anesthesia Medical Group, Inc. is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.


KITCHING, J.


13