Filed 12/12/19; certified for partial publication 1/13/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| CARLA ST. MYERS, | C085980 |
| Plaintiff and Appellant, | (Super. Ct. No. 15CV41238) |
| v. | |
| DIGNITY HEALTH et al., | |
| Defendants and Respondents. | |

Plaintiff Carla St. Myers worked as a nurse practitioner at a rural clinic that was part of a medical center owned and operated by defendant Dignity Health. During the three years she worked there, she submitted over 50 complaints about working conditions and was also the subject of several investigations based on anonymous complaints. All the investigations concluded the complaints against St. Myers were unsubstantiated and no action was taken against her. She found another job and resigned.

1

Claiming her resignation was a constructive termination due to intolerable working conditions, St. Myers sued Dignity Health and Optum360 Services, Inc.; the latter was a company that provided revenue cycle services to Dignity Health. The complaint set forth three causes of action for retaliation under various statutory provisions and constructive discharge in violation of public policy (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178). It sought both general and punitive damages. The trial court granted the separate motions of Dignity Health and Optum360 for summary judgment and St. Myers appeals from the subsequent judgments.

As to Optum360, we find St. Myers failed to establish a triable issue of material fact that Optum360 was her employer, a prerequisite under the pleadings for all her claims. As to Dignity Health, we find St. Myers failed to raise a triable issue of fact as to any adverse employment action. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*St. Myers's Employment at MTMC*

Dignity Health is a national health care system, consisting of more than 40 hospitals and care centers, including Mark Twain Medical Center (MTMC). MTMC is a rural access hospital with five rural health clinics, including clinics at Valley Springs and Angels Camp. Prior to 2012, MTMC was a division of Catholic Healthcare West. In about 2012, Catholic Healthcare West became Dignity Health.

Beginning in December 2013, Optum360 provided end-to-end revenue cycling services to MTMC. These services included scheduling, patient registration, health information management such as coding and transcription, billing, and collections. Optum360 provides MTMC with software and staff to teach best practices in scheduling, billing and collections. Four former employees of Dignity Health, including Mari Valentine, became Optum360 employees and had essentially the same jobs.

St. Myers is a nurse practitioner. She and her then significant other Dr. Steven Mills began working at MTMC in 2011, first at the Valley Springs clinic and six months

2

later at the Angels Camp clinic. They claimed there was an agreement with MTMC that they would work at the same clinic, but there was nothing in writing about this alleged promise. St. Myers's employment offer included an incentive bonus of $20.50 for each patient she saw above 16 patients a day. Beginning in early 2012, St. Myers began to complain about working conditions and what she perceived to be patient safety and care issues.

In the fall of 2012, St. Myers was the subject of three investigations. In the first St. Myers was investigated for improper access of patient medical records. The accusations were found to be unsubstantiated. MTMC had a complaint hotline through which employees could make anonymous complaints. In September there was an anonymous complaint that St. Myers and Mills were engaging in inappropriate behavior in the workplace. The complaint was investigated and found unsubstantiated. The third investigation was in response to anonymous accusations of drug addiction and other misuse of drugs by St. Myers and Mills. The Board of Nursing investigated and the complaint was found to be unsubstantiated. Dignity Health took no action against St. Myers as a result of any of these investigations.

On September 5, 2014, St. Myers sent MTMC a letter of resignation, giving two weeks' notice. In the letter she stated: "I feel it is in both my professional and personal interest to move forward with pursuing other career opportunities." At that time, she had an offer for a higher paying job.

*The Complaint*

St. Myers brought suit against Dignity Health and Optum360. She alleged she was employed by both defendants. In her first amended complaint she set forth in detail the over 50 times that she had complained about working conditions. Many of the complaints were about the central scheduling system. Other complaints were about safety issues, particularly doors that did not lock or close properly. St. Myers also

3

complained about things she believed adversely affected patient care, such as missing or inadequate equipment, and poor or insufficient staff.

The first cause of action was for a violation of Health and Safety Code section 1278.5.[1]  That section provides whistleblower protection for health care workers who report unsafe patient care and conditions.  It prohibits discrimination or retaliation by a health facility against an employee who has presented a grievance, complaint, or report to the facility.  (*Id.*, subd. (b)(1)(A).)  St. Myers alleged:  "Defendants harassed, discriminated, and retaliated against Plaintiff because she reported concerns about patient care, services, and hospital conditions."

The second cause of action alleged a violation of Labor Code sections 98.6 and 1102.5.  Section 98.6 of the Labor Code prohibits discharging an employee for filing a bona fide complaint or claim relating to her rights under the jurisdiction of the Labor Commissioner.  Labor Code Section 1102.5, subdivision (b) prohibits retaliation for disclosing information about a violation or noncompliance with federal, state, or local statute, rule, or regulation.  Subdivision (c) of that section prohibits retaliation against an employee for refusing to participate in such activity.  The complaint alleged St. Myers made numerous complaints to persons with authority over MTMC about patient safety, retaliation, and unsafe working conditions and stated her refusal to participate in violating state statutes.  It further alleged defendants retaliated against her by constructively terminating her employment.

The third cause of action alleged a violation of Labor Code section 6310, which provides for reinstatement and reimbursement for lost wages and benefits for an employee discharged or discriminated against for reporting unsafe working conditions.  St. Myers alleged she was retaliated against (for reporting safety issues) through false

---

[1]  Further undesignated statutory references are to the Health and Safety Code.

4

accusations of drug use, violation of the agreement to be assigned to the same location as Mills, and constructive discharge.

St. Myers alleged in the fourth cause of action that she was forced to resign for reasons that violate public policy, resulting in her constructive discharge. She claimed she was subjected to working conditions that violated public policy and defendants' retaliation against her also violated the public policy. She alleged she resigned because of the intolerable working conditions.

The amended complaint alleged each cause of action was perpetrated or ratified (or both) by defendants' managing agent or officer and the acts were done with malice, fraud, oppression, and in reckless disregard of St. Myers's rights. It sought both compensatory and punitive damages.

*Dignity Health's Motion for Summary Judgment*

Dignity Health moved for summary judgment, contending that St. Myers could not establish an adverse employment action. Dignity Health provided portions of St. Myers's deposition to establish that she was never subject to a disciplinary write-up, suspended, or demoted. She had received a very good job evaluation, thanked for an "outstanding job," and been given a raise. She was never denied a raise received by others at her level. She declined an offer to accept management duties. No action was ever taken against her because of the investigations. She was asked to consider a transfer to another location 15 miles away but resigned before any transfer could take place. St. Myers had testified she thought about quitting for years. At the time she resigned, she had a job offer that paid more. She was not subject to any discipline or in danger of being fired when she left; she could have stayed working at MTMC.

In opposition, St. Myers argued she was constructively discharged because the conditions at the Angels Camp clinic put her at risk for practicing medicine below the standard of care. She further claimed her complaints about safety issues resulted in a

5

campaign of harassment in the form of baseless investigations and manipulation of patient scheduling to affect her productivity and her bonus compensation.

In response to Dignity Health's assertion that St. Myers was not constructively terminated from employment, St. Myers offered 12 adverse actions that she claimed constituted a campaign of harassment: (1) constant harassment from supervisors; (2) a baseless investigation of improper sexual behavior by her and Mills at the clinic; (3) a baseless investigation involving drugs; (4) defamatory rumors in a small town; (5) multiple false anonymous hotline complaints; (6) harassment by schedule manipulation, such as intentionally overbooking her schedule and refusing to change her scheduling template, which indicates the type and number of patients she serviced; (7) harassment by schedule manipulation, such as scheduling her patients with other providers and elimination of reminder calls, which increased no-shows; (8) refusal to address equipment concerns; (9) reduction in income through schedule manipulation after complaints about patient safety; (10) a work environment that was below the standard of care; (11) being forced to practice unethically below the standard of care; and (12) a work environment that placed her license at risk due to baseless investigations, inadequate policies and procedures, and intentional interference by Valentine, the admitting manager.

St. Myers provided evidence in the form of excerpts of depositions and declarations to support the allegations that she had complained about the workplace, that Valentine manipulated scheduling and staff feared Valentine's retaliation, and that many people at MTMC said negative things about St. Myers. She provided evidence that she was subjected to an investigation based on an anonymous accusation that she had made disparaging remarks about a nurse whose work she criticized. The complaint was investigated and found unsubstantiated.

St. Myers provided the declaration of Dr. Mills, who had his own litany of complaints about MTMC. He declared he witnessed the harassment of St. Myers, citing

6

the baseless investigations, the threat to transfer her, the schedule manipulation, anonymous complaints, and a reputational smear campaign. He also set forth that St. Myers became depressed over concerns that she might lose her nursing license and job.

The trial court relied solely on party depositions in ruling on the motion and thus did not rule on the many hearsay objections beyond those to deposition testimony. The court found St. Myers did not suffer an adverse employment action. Instead, it found the "litany of potential workplace actions or potential speculative consequences suffice to establish that plaintiff suffered no material adverse employment action while employed by defendant." St. Myers could not establish an essential element of the first three causes of action. As to the fourth cause of action, the court found no evidence of coercion necessary for constructive discharge. It further found no evidence of oppression, fraud, or malice. The court entered judgment in favor of Dignity Health.

*Optum360's Motion for Summary Judgment*

Optum360 filed a motion for summary judgment on several grounds. Optum360 asserted it was neither St. Myers's employer nor a health facility subject to section 1278.5. Relying on the fact that it came to MTMC in December 2013, Optum360 argued that St. Myers did not engage in any protected activity because her complaints related to matters occurring before then. Further, there was no adverse employment action, and no constructive discharge.

Optum360 provided excerpts from St. Myers's deposition in which she testified she did not communicate with Optum360 about her resignation. St. Myers also testified that Valentine, who left Dignity Health and went to work for Optum360 after it began providing services for MTMC, could not unilaterally fire her.

Optum360 also provided the declaration of Joshua Goldman, its "Chief People Officer" whose duties included all aspects of human resources management. He set forth the revenue cycle services Optum360 provided to MTMC. Optum360 had four staff members servicing MTMC, including Valentine, who taught best practices to Dignity

7

Health's front office staff who perform patient scheduling and registration, as well as billing and collection. The front office staff does not provide medical care. No Optum360 staff worked on-site at MTMC. Goldman reviewed Optum360's personnel records and found no record that St. Myers was ever an employee. Optum360 did not pay medical providers such as St. Myers for their services at MTMC. Nor did it provide them with benefits or pay or pay social security or other payroll taxes on their behalf. It had no authority to hire, transfer, or terminate medical providers, and has never owned any of the Mark Twain hospital or medical facilities or their equipment.

In opposition, St. Myers provided evidence, in the form of financial reports, that Optum360 was a joint venture between Dignity Health and OptumInsight, Inc., and Dignity Health contributed certain equipment and intellectual property related to revenue cycle management in exchange for a 25 percent interest in Optum360. St. Myers disputed that Optum360 did not set or control her pay because Valentine controlled the scheduling of patients. St. Myers received an extra $20.50 for every patient in excess of 16 that she saw in one day. St. Myers claimed Valentine's manipulation of the scheduling affected her pay.

The trial court, again relying on party depositions, found St. Myers failed to show that Optum360 was her co-employer. Instead, Dignity Health and Optum360 had a business arrangement that separated the clerical and administrative staff from the medical practitioners, and St. Myers disagreed with the decision to come to this arrangement. Even if St. Myers were correct that this arrangement posed a detriment to patient safety, any potential liability would be borne by Dignity Health, not Optum360 because it was not a co-employer or a health care facility. The court entered judgment in favor of Optum360.

## DISCUSSION

### I

*Compliance with Rules of Court*

Both Dignity Health and Optum360 observe that St. Myers has violated the California Rules of Court and note correctly that the penalty for such violation may be forfeiture of the argument.

California Rules of Court, rule 8.204(a)(1)(C) requires that each appellate brief must "support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Here, St. Myers provides citations only to her separate statement of disputed facts, without citing to the evidence in the record supporting the facts asserted in her separate statement. As we have explained: "The separate statement is not itself evidence of anything. It is mere assertion. The evidence of the asserted facts appears elsewhere—in affidavits, depositions, etc. Plaintiff's brief should have cited to those pages in addition to the separate statement of disputed facts." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024-1025, disapproved on another point in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 634, fn. 7.) "In this instance, we shall disregard the failure to comply with the appellate rules, though we note for the benefit of appellate counsel that this court has discretion to disregard contentions unsupported by proper page cites to the record." (*Id.* at p. 1025.) We remind counsel that, "The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

### II

*Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A

defendant meets his or her burden of showing that a cause of action has no merit if he shows that one or more of the elements of the cause of action cannot be established, or that there is a complete defense. (*Id.*, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

We review an order granting summary judgment de novo. (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) "Because the granting of a summary judgment motion involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1259.)

III

*Joint Employer*

St. Myers contends the trial court erred in finding that Optum360 was not a joint employer. She argues the facts show that Optum360 controlled many aspects of her employment, such as scheduling, pay potential, and her ability to safely practice medicine and provide adequate patient care. She also relies on facts showing that the Optum360 managers, such as Valentine, worked for Dignity Health before Optum360 came into existence and their jobs did not change once they became Optum360 employees.

All of St. Myers's claims are premised on the allegation that Optum360 was her joint employer. Section 1278.5, subdivision (b) prohibits discrimination or retaliation against an employee. Both Labor Code sections 98.6 and 1102.5, subdivision (b) prohibit an employer from discriminating or retaliating against an employee for filing a complaint or disclosing information about a safety violation. Labor Code section 6310 protects an employee from discharge or other discrimination by the employer for filing a complaint about workplace safety. The fourth cause of action is for constructive discharge in violation of public policy. "[A] *Tameny* action for wrongful discharge can only be

10

asserted against *an employer*." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900.)

"The various designated tests adopted by the courts to determine the existence of an employer/employee relationship have articulated many of the same or similar governing standards, and have 'little discernible difference' between them. [Citations.] The common and prevailing principle espoused in all of the tests directs us to consider the 'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties. [Citations.] 'There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze "myriad facts surrounding the employment relationship in question." [Citation.] No one factor is decisive. [Citation.]' [Citations.] '[T]he precise contours of an employment relationship can only be established by a careful factual inquiry.' [Citation.]

"Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment. [Citations.] ' "Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." ' " (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124-125 (*Vernon*), fn. omitted.) The most important factor

11

is "the defendant's right to control the means and manner of the workers' performance." (*Id.* at p. 126.)

Optum360 provided evidence showing that it did not pay St. Myers' salary, benefits, or Social Security taxes. It did not own the equipment that St. Myers used when she performed her work at a clinic owned by MTMC. Optum360 did not have authority to hire, transfer, demote, discipline, or discharge St. Myers and did not set her schedule or determine her amount of pay. Further, St. Myers testified she worked fairly autonomously, with only monthly chart reviews by a supervising physician. No Optum360 staff provided medical care.

St. Myers contends Optum360 did control her work because Valentine controlled the scheduling of patients and had the ability to manipulate the schedule to reduce her compensation, presumably by not scheduling more than 16 patients a day so St. Myers did not receive an incentive bonus.

St. Myers cites to *Torrez-Lopez v. May* (9th Cir. 1997) 111 F.3d 633 at page 643, where the Ninth Circuit found Bear Creek Farms' exercise of some control over the rate of pay for farmworkers hired by a farm labor contractor contributed to the finding that Bear Creek was a joint employer of the farmworkers. St. Myers exaggerates the appellate court's reliance on this one aspect of control. The court found Bear Creek had an ownership interest in the premises and work equipment and exercised *considerable indirect control* over working conditions and that the district court erred in declining to attribute much significance to non-regulatory factors in determining joint employment. (*Id.* at pp. 640-644.) The Ninth Circuit found all but one of the eight non-regulatory factors pointed to a conclusion that the farmworkers were employees of Bear Creek Farms. (*Id.* at p. 643.)

In determining whether Optum360 was a joint employer of St. Myers we consider the totality of the circumstances, not a single factor. (*Vernon, supra,* 116 Cal.App.4th at p. 124.) Here, nearly all the factors point to the conclusion that Optum360 was *not* a joint

employer of St. Myers.  That Optum360 *may* have had a modicum degree of control over St. Myers's pay through the ability of one of its employees (Valentine) to make small changes to the schedule does not change this conclusion.**2**

In passing, St. Myers contends Optum360 controlled her ability to safely practice medicine.  St. Myers's "opening brief fails to support [her] assertion by citation to argument or authority.  This conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate.  We therefore treat the issue as abandoned and do not address it on the merits." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; see also Cal. Rules of Court, rule 8.204(a)(1)(B).)

In the alternative, St. Myers contends section 1278.5 does not require an employer-employee relationship.  The statute provides whistleblower protection against discrimination or retaliation by a health facility to any health care worker of the health facility who reports unsafe patient care and conditions; its protections are not limited to employees.  (§ 1278.5, subd. (b).)

The amended complaint, however, bases Optum360's liability on its status as a joint employer.  " '[T]he pleadings delimit the issues to be considered on a motion for summary judgment. [Citation.]'  [Citation.]  Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Moreover, St. Myers's contention has no merit.  She asserts Optum360 is a health facility because it operates MTMC by managing and influencing day-to-day operations.  A "health facility" under this statute "means any facility defined under this chapter,

---

**2** We point out that St. Myers provided *no* evidence that Valentine's alleged manipulation of scheduling *actually* decreased her pay.

13

including, but not limited to, the facility's administrative personnel, employees, boards, and committees of the board, and medical staff." (§ 1278.5, subd. (i).) Chapter 2 of Division 2 of the Health and Safety Code defines "health facility" as "a facility, place, or building that is organized, maintained, and operated for the diagnosis, care, prevention, and treatment of human illness, physical or mental, including convalescence and rehabilitation and including care during and after pregnancy." (§ 1250.)

The target defendant of section 1278.5 is the facility, here MTMC. (*Armin v. Riverside Community Hospital* (2016) 5 Cal.App.5th 810, 832.) Optum360 provided end-to-end revenue cycling services to MTMC. These services included scheduling, patient registration, health information management in the form of coding and transcription, billing, and collections. Optum360 provided services to the front office staff; the office staff did not provide medical care. No Optum360 staff worked on-site at MTMC. This evidence established that Optum360 was a third-party service provider to MTMC; it did not operate MTMC.[3] Optum360 provided ancillary services; it did not operate or manage "the diagnosis, care, prevention, and treatment of human illness." (§ 1250.)

St. Myers argues that without the scheduling and billing services provided by Optum360, MTMC's clinics would be unable to operate. This may be an accurate observation, but it is not relevant; a medical clinic needs power and water to operate, but that does not make utility companies "health facilities" under the statute.

Finally, St. Myers contends public policy requires that Optum360 qualify as a "health facility." Otherwise, she argues, a hospital system could avoid liability by outsourcing all managerial and administrative control of the facility to a third party. We

---

[3] We deny St. Myers's request for judicial notice of dictionary definitions of "operate" as unnecessary to our resolution of this appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

need not determine if a hospital system could so avoid liability because such outsourcing did not occur here. Dignity Health owns and operates the health facility at issue and is the proper defendant for a claim under section 1278.5.

The trial court did not err in granting Optum360's motion for summary judgment.

IV

*Constructive Discharge*

St. Myers's first three causes of action allege retaliation under section 1278.5, Labor Code sections 98.6 and 1102.5, and Labor Code section 6310. All three causes of action have similar requirements, and all require an adverse employment action. To establish a prima facie case under each, St. Myers must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) a causal link between the two. (*Jadwin v. County of Kern* (E.D. Cal. 2009) 610 F.Supp.2d 1129, 1144 [§ 1278.5]; *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 [Lab. Code § 1102.5]; *Cuevas v. SkyWest Airlines* (N.D. Cal. 2014) 17 F.Supp.3d 956, 964 [Lab. Code, § 6310].) Her fourth cause of action was for constructive discharge in violation of public policy.

St. Myers contends she was subjected to a material adverse employment action because she was constructively discharged. She contends she was subjected to intolerable working conditions, a campaign of harassment in the form of baseless investigations, false complaints whose sources were not investigated, a refusal to remedy safety issues, schedule manipulation that affected her pay and bonus compensation, and being forced to practice in unsafe conditions and below the standard of care.

"Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." (*Turner v. Anheuser-Busch, Inc*. (1994) 7 Cal.4th 1238, 1244-

15

1245 (*Turner*).) " 'Constructive discharge, like actual discharge, is a materially adverse employment action.' " (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1253.)

"In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner, supra,* 7 Cal.4th at p. 1251.)

"The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." (*Turner, supra,* 7 Cal.4th at p. 1246.) "In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." (*Id.* at p. 1247.) "The essence of the test is whether, under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position ' " 'would have felt compelled to resign.' " ' " (*Ibid.*)

The undisputed evidence showed that St. Myers had never been disciplined, suspended, or demoted. She received a raise and her performance evaluation praised her outstanding work. She authored an e-mail thanking others for helping to improve the clinic. She was offered the opportunity to assume management duties. At the time of her resignation, she did not believe she was in danger of being fired and thought she could have stayed at her job. She quit only after she had a better job offer. When she resigned, she gave two weeks' notice.

16

Despite this positive work history, St. Myers contends she was subject to continuous harassment. She blames Dignity Health for the anonymous complaints that led to investigations and faults it for failing to investigate the complainants. But the identity of the complainants behind these anonymous complaints was, as their classification as "anonymous" suggests, largely unknown. Although St. Myers testified she was told Valentine and another employee were behind the complaint about accessing patient information, she admitted in her deposition that she did not know who made the other complaints, and she also admitted that Dignity Health had a duty to investigate regardless. In opposition to Dignity Health's summary judgment motion, St. Myers provided only hearsay evidence, speculation, or suspicion. This evidence of suspicion, much of it inadmissible, is insufficient to create a triable issue of fact that Dignity Health "either intentionally created or knowingly permitted" (*Turner, supra,* 7 Cal.4th at p. 1251) the false accusations against St. Myers. Nor did St. Myers offer any evidence or law as support for her assertion that Dignity Health had a duty to investigate the *source* of complaints made through the *anonymous* complaint hotline. St. Myers contends the accusations of improperly accessing patient information and drug use had the potential to threaten her career. All of the investigations, however, found the accusations against St. Myers to be baseless and no action was taken against her because of them.

St. Myers contends Valentine harassed her by manipulating her schedule, either reducing the number of her patients so that she appeared unproductive and lost incentive bonuses, or increasing the number to overwhelm her. St. Myers, however, provided no evidence to back up these claims. (See *Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 512 [sustaining demurrer proper where allegations not supported by facts evidencing substantial and detrimental effect on employment].) Her raise and outstanding performance evaluation belie the claim she was made to appear unproductive to her detriment.

17

St. Myers contends she was forced to work in an unsafe workplace and below the standard of care. She did not, however, provide any evidence as to the standard of care for a medical clinic. Nor did she provide evidence of negligence that common knowledge would indicate was below the standard of care. (See *Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1302 [expert testimony required on standard of care except in rare circumstance where negligence can be evaluated by resort to common knowledge].) Many of her complaints are about what she perceives as deficiencies, such as scheduling her patients with other providers, the lack of weekly rounds at the clinic and yearly evaluations for providers, and not scanning medication refills into the patient's file, but she does not tie these alleged deficiencies to any established standard. Her letter of resignation makes this point: "MTMC does not meet *my* standards of practice." (Italics added.) "[P]ersonal beliefs or concerns are not evidence." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 396 (*McRae*).)

St. Myers's litany of complaints fails to raise a triable issue of fact that Dignity Health "either intentionally created or knowingly permitted" an intolerable workplace that coerced her to resign. Other cases show the degree of coercion required.

In *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, the plaintiff had worked for her employer for over 21 years until she was forced to take medical leave due to a medical condition exacerbated by the wrongful acts of her employer and was unable thereafter to return to work. During her entire career, her performance reviews rated her commendable to outstanding, she received progressive salary increases that were consistent with her excellent work, and she had a reputation for honesty, integrity, competence, and for accomplishing difficult projects on time and under budget. (*Id.* at pp. 1301-1302, 1307.) The appellate court reversed a summary judgment in favor of the employer, finding plaintiff raised a triable issue of constructive discharge. Her supervisor had instructed others to document plaintiff for termination and told others she was

18

incompetent without specifics or evidence; there was an instruction to falsify a memo to make it look like plaintiff had made a mistake and another supervisor demanded plaintiff process unlawful orders. (*Id.* at p. 1309.) A reorganization significantly changed her duties without notice to her and her new duties were excessive and unnecessary, raising the reasonable inference of a plan "to push plaintiff to quit her job." (*Id.* at p. 1310.)

The plaintiff provided enough evidence to create a triable issue of fact of constructive discharge in *Juell v. Forest Pharmaceuticals, Inc.* (E.D. Cal. 2006) 456 F.Supp.2d 1141, despite undisputed evidence of above-average performance reviews, promotions, bonuses and stock options, and a six-figure salary. Plaintiff, a sales manager, provided evidence that he was given excessive responsibilities that could not be completed by one person; to complete the work, plaintiff's wife often worked 40 hours a week to assist him with administrative duties. His manager made degrading comments about his age to plaintiff every time they spoke, and made similar comments frequently to others, including clients, implying that plaintiff's abilities may be suspect because of his age. "As such, plaintiff has presented sufficient evidence to raise a triable issue of fact regarding whether his working conditions were objectively intolerable." (*Id.* at p. 1153.)

Unlike in *Colores* and *Juell*, St. Myers offered no admissible evidence of actions by Dignity Health or its employees to coerce her to resign. She testified she was not in danger of being disciplined when she resigned, and she could have continued working at MTMC. Her workload was not increased and her competence was not questioned. The only alleged actions directed at her specifically were the investigations, none of which found her at fault. She offered only speculation and hearsay that agents of Dignity Health were behind the accusations that lead to the inquiries and admitted Dignity Health had a duty to investigate. No evidence of constructive discharge appears.

19

# V

## *Other Adverse Actions*

St. Myers contends she was subject to adverse employment actions in addition to constructive termination.  She cites to the manipulation of her schedule, the false allegations against her and resulting investigations, the spreading of rumors based on these false allegations, and the requirements that she practice below the standard of care.

"In California, an employee seeking recovery on a theory of unlawful discrimination or retaliation must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment, rather than simply that the employee has been subjected to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity.  [Citation.]  'A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient.'  [Citation.]  ' "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." [Citation.]  If every minor change in working conditions or trivial action were a materially adverse action then any "action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." [Citation.]'  [Citation.]  The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiff's employment.  [Citations.]" (*McRae, supra,* 142 Cal.App.4th at p. 386.)

As discussed *ante*, St. Myers failed to provide admissible evidence to create a triable issue of fact that the manipulation of her schedule detrimentally affected her pay or that she was forced to practice below the standard of care.  Further, she failed to raise a triable issue of fact that Dignity Health or its agents were behind the false allegations that led to investigations and rumors.

20

St. Myers contends the standard for an adverse employment action under section 1278.5 is "far broader" than the standard for other retaliation actions. Subdivision (d)(2) of section 1278.5 defines "discriminatory treatment" to include "discharge, demotion, suspension, or *any unfavorable changes in*, or breach of, the terms or conditions of a contract, employment, or privileges of the employee." (Italics added.) Even if we accept this new contention, raised for the first time on appeal, it fails. The problem with St. Myers's case is not that she failed to raise a triable issue of fact as to the materiality of the adverse employment action, but that she failed to raise a triable issue of fact that there was *any* adverse employment action.

The trial court did not err in granting Dignity Health's motion for summary judgment.

VI

*Punitive Damages*

"Tort liability is a necessary predicate for punitive damages." (*Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 896.) Because the trial court properly granted summary judgment to all causes of action, St. Myers's claim for punitive damages fails as well.

21

**DISPOSITION**

The judgment is affirmed.  Dignity Health and Optum360 shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                         /s/
                                Duarte, Acting P. J.

We concur:

     /s/
Renner, J.

     /s/
Krause, J.

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| CARLA ST. MYERS, | C085980 |
| Plaintiff and Appellant, | (Super. Ct. No. 15CV41238) |
| v. | ORDER GRANTING PARTIAL PUBLICATION |
| DIGNITY HEALTH et al., | |
| Defendants and Respondents. | |

THE COURT:

Defendants Optum360 Services, Inc., and Dignity Health, and non-party California Hospital Association, have filed a joint request for publication with this court. It is hereby ordered:

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and VI.

1

1. The opinion in the above-entitled matter filed December 12, 2019, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

FOR THE COURT:

_____/s/_____
Duarte, Acting P. J.

_____/s/_____
Renner, J.

_____/s/_____
Krause, J.

2

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Calaveras County, Susan C. Harlan, Judge.  Affirmed.

Bohm Law Group, Lawrance A. Bohm and Zane E. Hilton for Plaintiff and Appellant Carla St. Meyers.

Kronick, Moskovitz, Tiedemann & Girard, Rex Darrell Berry, James W. Ward; Atkinson, Andelson, Loya, Ruud & Romo and Rex Darrell Berry for Defendant and Respondent Dignity Health.

Seyfarth Shaw, Laura Jean Maechtlen, Michael Anderson Wahlander, Timothy M. Hoppe and Parnian Vafaeenia for Defendant and Respondent Optum360 Services, Inc.