Filed 7/18/25  Mendoza v. Loma Linda University Shared Services CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| REGINA MENDOZA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LOMA LINDA UNIVERSITY SHARED SERVICES et al.,<br><br>    Defendants and Appellants. | D083320<br><br><br><br>(Super. Ct. No. CIVDS1922539) |


APPEAL from an order of the Superior Court of San Bernardino, Michael A. Sachs, Judge.  Affirmed.

Cole Pedroza, Kenneth R. Pedroza, and David Z. Sohn, for Defendants and Appellants.

Schwimer Weinstein, Mitchell E. Rosensweig, and Michael E. Schwimer, for Plaintiff and Respondent.


Regina Mendoza filed this lawsuit against her former employers, defendants Loma Linda University Shared Services (Shared Services) and Loma Linda University Medical Center - Murrieta (Murrieta Medical

Center), claiming they discriminated against her on the basis of her sexual orientation when they eliminated her job. Defendants appeal from a trial court order granting a motion for new trial in which the court partially reversed its earlier decision granting summary judgment in defendants' favor.

Mendoza has raised a threshold question of this court's jurisdiction, arguing the court's order was not final and appealable. We reject this argument because an order granting a new trial or partial new trial is appealable. (Code Civ. Proc., § 904.1, subd. (a)(4).)[1]

On the merits, defendants first argue that Mendoza has not adequately rebutted their legitimate, nondiscriminatory ground for eliminating her position. But the circumstances of Mendoza's termination coupled with Shared Services' expressly discriminatory sexual standards policy support a reasonable inference of discrimination. Accordingly, defendants are not entitled to summary judgment on Mendoza's sexual orientation discrimination claim under the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940, subd. (a).)

Second, defendants claim that Shared Services is exempt from FEHA because it is a not-for-profit religious corporation and thus not an "employer" subject to FEHA's antidiscrimination provisions. (See Gov. Code, § 12926, subd. (d).) We conclude that because a reasonable trier of fact could determine Mendoza was "employed . . . at a health care facility operated by" Shared Services, it is a triable issue of fact whether Shared Services falls

---

[1] All further statutory references are to the Code of Civil Procedures unless otherwise indicated.

2

within this statutory carve-out to the religious-corporation exemption, making it an "employer" under FEHA.  (Gov. Code, § 12926.2, subd. (c).)

Finally, defendants argue Mendoza was employed solely by Shared Services and not by Murietta Medical Center at the time of her termination. We find that this inherently fact-intensive determination cannot be made as a matter of law on the basis of the summary judgment record.

For these reasons, we affirm the trial court's order granting the motion for a new trial.

BACKGROUND

A.    *Factual Background*

Defendants are part of the Loma Linda University Health system, a hospital network that includes a "main campus" hospital, located in Loma Linda, and Murrieta Medical Center, located in Murietta. Mendoza began working in the supply chain department of Murrieta Medical Center in 2011. In 2018, the Loma Linda University Health system consolidated the previously separate finance and supply chain departments of the affiliated hospital entities into Shared Services. As a result of this restructuring, Mendoza began working for Shared Services in February 2018 and was promoted, becoming one of three supply chain directors. Despite the change in title and employer,[2] Mendoza continued working onsite at the Murrieta Medical Center managing supply chain for Murrieta Medical Center. Her direct supervisor at Shared Services was Joshua Lund, Assistant Vice President of the Supply Chain Management Department.

Both Shared Services and Murrieta Medical Center are registered as nonprofit religious corporations with the California Secretary of State. In April 2018, Shared Services adopted the following policy:

> "Employees, administrators, and trustees of Loma Linda University Shared Services are expected, in their work, teaching, influence, and example to uphold Christian sexual standards as held by the Seventh-day Adventist Church. [Shared Services] believes that God's ideal for sexuality is achieved when sexual expression is limited to a man and a woman who are husband and wife, committed in lifelong marriage. Premarital and extramarital sexual expression and conduct are to be chaste, and

---

[2]    The parties dispute whether Murrieta Medical Center should also be considered Mendoza's indirect employer for this period. We address this dispute below.

4

behaviors that suggest otherwise are to be avoided. Unchaste conduct is contrary to the ideals of [Shared Services] and will result in disciplinary action.

"Further, all forms of promiscuity, sexual abuse, and exploitation are contrary to the ideals of [Shared Services] and will result in disciplinary action. [Shared Services] honors an ideal of sexual purity that transcends mere legal enforcements."

In November 2018, Murrieta Medical Center adopted a substantively identical Christian Sexual Standards Policy.

Mendoza identifies as homosexual and was in a long-term domestic partnership with a woman while she was employed by Murrieta Medical Center and Shared Services. Mendoza discussed this aspect of her personal life with Lund "on several occasions." In addition, Peter Baker, then Senior Vice President and the "top executive" at Murrieta Medical Center, was made aware of Mendoza's domestic partnership in November 2017.

In late 2016 or early 2017, Mendoza began a romantic affair with Rosemary Withem, another Murrieta Medical Center employee. That relationship lasted approximately six months, after which Mendoza reconciled with her partner. In 2018, rumors about the affair circulated among several Murrieta Medical Center employees.

On August 17, 2018, six months after Mendoza was promoted as part of the restructuring and four months after Shared Services adopted its sexual standards policy, Mendoza was informed that she was being terminated and her job was being eliminated. According to a declaration submitted by Lund, he was not aware of Shared Services' Christian Sexual Standards Policy when he terminated Mendoza. Rather, he claimed, "he had determined that Mendoza's position was no longer necessary" and "assessed that eliminating [her] position would save approximately $95,000 per year." He stated he

5

"alone made this decision" and did so in connection with the broader organizational restructuring of the supply chain department. He also claimed, "Mendoza's position was eliminated based on having the least amount of seniority among three total directors of purchasing."

Other evidence contradicted or cast doubt on Lund's version of events. Specifically, there was evidence that Lund consulted with Baker and Alan Soderblom, then Vice President of Finance at Loma Linda University Health, before making the decision to fire Mendoza. Indeed, Soderblom apparently raised concerns about Mendoza's performance in August 2018 before any evidence shows Lund was considering eliminating her position for cost saving purposes. Furthermore, Mendoza was the only supply chain employee defendants claim was laid off due to restructuring, and Withem, who worked for Soderblom, was informed she was being terminated days after Mendoza, on August 24, 2018.

B. *Procedural Background*

Mendoza filed this lawsuit against defendants claiming, among other things, that defendants fired her because of her sexual orientation in violation of FEHA. Defendants filed an answer, which included a general denial and affirmative defenses, including that Mendoza's claims against Shared Services are "barred by California Government Code sections 12926 subdivision (d) an[d] 12926.2, subdivision (c), which excludes from the definition of 'employer' under FEHA religious associations or religious corporations that are not a health care facility or do not operate a health care facility."

1. *Original Summary Judgment Ruling*

Defendants filed a motion for summary judgment or summary adjudication, which the trial court initially granted. The court found that

6

defendants had not carried their burden with respect to two of their affirmative defenses, concluding they had not shown Shared Services was Mendoza's sole employer or that they were entitled to a religious corporation exemption from FEHA. But, relevant to this appeal, the court found defendants were entitled to summary judgment because they "met their initial burden of showing a legitimate and non-discriminatory basis for the termination . . . and Mendoza failed to submit 'substantial responsive evidence' showing pretext."

The court found that although the Christian Sexual Standards Policy "on its face appears to support termination for 'unchaste' conduct," "Lund was unaware of any of defendants' Sexual Standards Policies." The court thus concluded that "even construing the [Christian Sexual Standards Policy] as illegally discriminatory, it did not serve as a basis for Lund's decision."

The court further concluded that although "Lund may have been aware of Mendoza's relationship with her domestic partner, and thus also the fact that she was homosexual . . . , there is nothing indicating Lund harbored animosity towards homosexuals or made his determination based on Mendoza's" sexual orientation as he "had encouraged Mendoza to apply to the director position and hired her with a pay increase," and "drafted a 'stellar' letter of reference." The court similarly found "e-mails and input given to Lund that are referenced by Mendoza do not show improper animus or motivation by those who may have had influence over Lund," namely Baker and Soderblom.

Finally, the court found it irrelevant that Mendoza and Withem both identified as homosexual and were both fired "during the purported restructuring." According to the court, "Mendoza fail[ed] to provide the statistical data with supporting evidence regarding how many positions were

7

terminated overall amongst all of defendants' departments, the make-up of the individuals terminated, etc." And "[w]hile Lund did testify 'at this time' he had only done a cost analysis as to Mendoza's position, he also indicated he had determined 'other purchasing manager positions' needed to be eliminated."

2. *Motion for Reconsideration*

Mendoza filed a motion for reconsideration on the ground that she had inadvertently filed "an incorrect and incomplete version of her Separate Statement" in connection with her opposition to defendants' motion for summary judgment. The trial court granted Mendoza's request, permitting her to "file a revised Separate Statement" that properly cited evidence in support of her factual contentions. After considering the revised separate statement, the court declined to change its summary judgment ruling.

### 3. *Motion for New Trial*

Mendoza filed a motion for new trial claiming, among other things, that the trial court had committed an "[e]rror in law" by granting defendants' motion. (§ 657, subd. (7).) Mendoza argued the court impermissibly "weigh[ed] the evidence and resolv[ed] doubts and inferences in the light most favorable to the moving Defendants." Mendoza specifically noted that the court credited Lund's statement he was unaware of the Christian Sexual Standards Policy, ignoring credibility issues raised by discrepancies between his deposition and his declaration. Mendoza also argued the court improperly disregarded circumstantial evidence of discrimination—that Mendoza was the only member of her 153-person department to be fired due to restructuring, and that Withem was terminated around the same time—due to the court's incorrect belief that Mendoza had to provide proof of "how many positions were terminated overall amongst all of defendants' departments."

At the hearing on the motion, the trial court stated its tentative decision was to grant Mendoza's motion for a new trial and reverse its summary judgment ruling with respect to her sexual orientation discrimination claim only. The court found it had erred by concluding Mendoza had not adduced evidence that defendants' legitimate, nondiscriminatory reason for firing Mendoza was pretextual.

The court noted the Christian Sexual Standards Policy "would be construed as unlawful and discriminatory" and that it "suggests that Mendoza could potentially be terminated for having a relationship with another woman." The court found there was a genuine dispute as to whether Lund was aware that Mendoza identified as homosexual based on Mendoza's statements that she and Lund had discussed her long-term partnership with a woman. The court further noted Mendoza was the only supply chain

9

employee whose job was affected by the restructuring during this period, and that Withem had also been fired in August 2018.

The trial court confirmed its tentative ruling in a minute order. The court did not comply with section 657, which requires a court to "state the ground or grounds relied upon" and provide a "specification of reasons" when ruling on a motion for new trial.

## DISCUSSION

A. *Appealability*

Mendoza has moved to dismiss this appeal, claiming the trial court's order was nonfinal and thus not immediately appealable. Specifically, Mendoza argues the court merely "grant[ed] 'reconsideration' of [its] order granting summary judgment," and that this "is not one of the specifically enumerated orders from which an appeal may be taken."

We conclude that the trial court's order was appealable as an order granting partial new trial. "A motion for a new trial is appropriate following an order granting summary judgment." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 (*Aguilar*).) And "an order granting a new trial" is appealable. (§ 904.1, subd. (a)(4).) This includes an order granting a partial new trial. (*Cobb v. University of Southern California* (1995) 32 Cal.App.4th 798, 802.)

Mendoza styled her motion a "motion for new trial." She also followed the notice and briefing procedures outlined in sections 659 and 659a, which concern new trial motions. And at the motion hearing, the court stated its tentative decision was "to grant the *motion for new trial* as it relates to the discrimination claim based on the alleged discriminatory policy." (Italics added.) The court adopted its tentative decision as its final ruling. The

10

record thus reflects that the parties and the court understood this was a motion for a new trial.

While the trial court's minute orders refer to the motion as a "[m]otion for reconsideration," this does not change our view of the procedural posture. In addition to the circumstances discussed above, because the court entered judgment on June 6, 2023, it lacked jurisdiction to grant reconsideration by the time Mendoza's motion for a new trial was filed on June 13. (See *Aguilar, supra*, 25 Cal.4th at p. 859, fn. 29 ["After entry of judgment, the superior court [does] not have jurisdiction to entertain or decide a motion for reconsideration."].) By contrast, the court retained jurisdiction to grant a motion for new trial. (§ 660, subd. (c).) We will thus not presume the court improperly converted Mendoza's "motion for a new trial" into a motion for reconsideration when it lacked jurisdiction to entertain such a motion.

We are not persuaded by defendants' related argument that the trial court lacked jurisdiction "to enter an order based on reconsideration." Defendants' only authority for this assertion is a quotation from *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606, "Once judgment has been entered, however, the court may not reconsider it and loses its *unrestricted* power to change the judgment." Defendants have omitted the very next sentence, which explains the court "may correct judicial error only through certain limited procedures *such as motions for new trial* and motions to vacate the judgment." (*Ibid.,* italics added.)

B.     *Evidence of Discrimination*

1.     *Standard of Review*

"Although ordinarily an order granting a new trial is reviewed only for abuse of discretion, . . . an order lacking an adequate specification of reasons is subject to independent review." (*Oakland Raiders v. National Football*

11

*League* (2007) 41 Cal.4th 624, 628 (*Oakland Raiders*).)  Moreover, it becomes the burden of the party defending the new trial order—here, Mendoza—" 'to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it' [citation] and to persuade the reviewing court that the trial court should have granted the motion for a new trial." (*Id.* at p. 641.)  "[T]he order shall be affirmed if it should have been granted upon any ground stated in the motion." (§ 657.)  Mendoza claims the trial court properly granted a new trial because its order granting defendants' motion for summary judgment was erroneous as a matter of law. This is a proper basis for granting a new trial, and it was raised in her motion.  (See § 657, subd. (7); *Aguilar, supra*, 25 Cal.4th at p. 860.)  We therefore must address whether the trial court's original order granting summary judgment was erroneous, a question we consider de novo.  (*Aguilar*, at p. 860.)

Defendants are only entitled to summary judgment if there are no genuine disputes of material fact and they are entitled to judgment as a matter of law.  (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207.)  A court may not weigh the evidence but must instead view it in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of that party.  (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864.)

2.    *Analysis*

Under FEHA, an employer may not subject an employee to an adverse employment action based on the employee's protected status, including sexual orientation.  (Gov. Code, § 12940, subd. (a).)  In evaluating claims of discrimination under FEHA, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.  (E.g., *Harris v. City*

*of Santa Monica* (2013) 56 Cal.4th 203, 214.) Under this framework, an employer who moves for summary judgment may meet its initial burden by presenting evidence that the employer acted for a legitimate, nondiscriminatory reason. (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181 (*Husman*).) If it does so, the burden of production shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a mere pretext. (*Id.* at p. 1182.)

Defendants proffered evidence of a legitimate, nondiscriminatory reason for dismissing Mendoza: cost savings for the restructured supply chain department under Shared Services. But Mendoza has also carried her burden of establishing a triable issue of fact as to whether this asserted reason was untrue or pretextual.

As an initial matter, Mendoza had transferred to Shared Services and been promoted as part of the restructuring in February 2018, just two months before Shared Services adopted its Christian Sexual Standards Policy. Yet defendants claim the same restructuring suddenly resulted in the elimination of her position only a few months later. Lund claimed that the elimination of her role was a matter of cost savings and seniority, but there was other evidence that he had discussed terminating Mendoza based on performance concerns, notwithstanding that he had recently recommended her for the promotion she received in February 2018. He also testified that he did not perform a cost analysis as to the other supply chain directors' positions and specifically focused on Mendoza's position. Moreover, no other

13

supply chain employees were terminated as a result of the restructuring.[3] While defendants claim, "Lund also testified that he determined that the remaining director of purchasing positions needed to be eliminated eventually," this was an assessment made over a year after Mendoza's termination. Accordingly, a factfinder could have reasonable grounds to doubt that the restructuring was the true reason for Mendoza's termination.

Mendoza also presented evidence that her termination was motivated by discriminatory animus, as Shared Services had an explicitly discriminatory policy at the time and Murrieta Medical Center adopted a substantively identical policy just a few months after her termination. The Christian Sexual Standards Policy stated that employees were "expected . . . to uphold Christian sexual standards as held by the Seventh-day Adventist Church" and "that God's ideal for sexuality is achieved when sexual expression is limited to a man and a woman who are husband and wife, committed in lifelong marriage." It further stated that "[u]nchaste conduct is contrary to the ideals of LLUSS and will result in disciplinary

---

[3] Defendants argue this "statistical" evidence is not persuasive, principally relying on language from *Peeples v. City of Detroit* (6th Cir. 2018) 891 F.3d 622 (*Peeples*) regarding sample sizes. For a variety of reasons, *Peeples* is not relevant to this case. In *Peeples*, plaintiffs conceded they had been terminated in connection with a "reduction in force" and thus had to meet a heightened standard of showing " 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff[s] for discharge for impermissible reasons.' " (*Id.* at p. 634.) This appears to be a Sixth-Circuit-specific rule; defendants do not cite any California authority applying it to a FEHA claim, and we have found none. In any event, unlike in *Peeples*, where 11 plaintiffs were laid off following the city's bankruptcy, Mendoza was the only employee purportedly subject to Shared Services' purported reduction in force, and the record suggests that her specific position was targeted for elimination. (*Id.* at p. 627.)

action." While Lund claimed he did not know about the policy, "summary judgment may be denied in the discretion of the court . . . if a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (§ 437c, subd. (e).) The trial court had the discretion to, and implicitly did, disregard Lund's claimed lack of knowledge because it was the only evidence presented on his own knowledge of the policy. Notably, the defendants presented no evidence as to when and how they informed managers and supervisors of this specific Shared Services policy after it was adopted in April 2018. (See, e.g., *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 ["[*A*]*ll* material facts must be set forth in the separate statement."].)

Defendants argue Lund did not even know Mendoza identified as homosexual. But there is a genuine dispute as to this question as well, as Lund asserted he did not know about her sexual orientation, while Mendoza claimed he did. If a jury were to believe Mendoza and disbelieve Lund on this point, it could also reasonably disbelieve Lund's claim of lack of knowledge of the Christian Sexual Standards Policy. While defendants similarly claim Baker did not know about Mendoza's sexual orientation, he testified he did not recall whether he knew about her sexual orientation before the lawsuit was filed. Baker denied knowing that Mendoza was in a long-term relationship, but Mendoza adduced evidence disputing this assertion.

Defendants also claim Lund could not have been biased against Mendoza because he had just hired her in February 2018, and he wrote her a "stellar letter of reference." They rely on the "same-actor inference" articulated in *Coghlan v. American Seafoods Co. LLC* (9th Cir. 2005) 413 F.3d 1090, 1096, footnote 10: "when the allegedly discriminatory actor is someone who has previously selected the plaintiff for favorable treatment,

15

that is very strong evidence that the actor holds no discriminatory animus, and the plaintiff must present correspondingly stronger evidence of bias in order to prevail." Mendoza's claim does not depend on Lund's personal animus, however, as her principal contention is that defendants acted pursuant to an expressly discriminatory policy, not Lund's preferences. In addition, the record reflects that Lund consulted with Baker and Soderblom about the decision, suggesting that other actors influenced his decision making.

In any case, "[w]hile once commonly relied on by courts affirming summary judgment against a plaintiff alleging discriminatory action, the same-actor inference has lost some of its persuasive appeal in recent years." (*Husman, supra*, 12 Cal.App.5th at p. 1188 [describing science discrediting the theory].) In our view, California law does not place the special emphasis on the same-actor inference that federal law may—at least at the summary judgment stage. (See *id.* at p. 1189 [" '[R]eliance on the same-actor inference to carry the moving party over the hurdle of summary judgment is legally impermissible, because drawing legitimate inferences from the facts are jury functions and, at summary judgment, the court must disregard all evidence favorable to the moving party that the jury is not required to believe.' "].) Lund's decision to hire Mendoza for a director role and the letter of reference are among several circumstances that may be considered and weighed by a finder of fact, but they do not compel summary judgment in defendants' favor. (See *Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 674 [no summary judgment based on same-actor inference where "plaintiffs proffered enough circumstantial evidence to create a triable issue" as to discriminatory motive].)

16

Defendants also point to the fact that Mendoza was offered the opportunity to displace an employee in a lower-paying position within the same job hierarchy as evidence that there was no discriminatory animus. We are not persuaded. Being forced into a more junior, lower-paying position would itself be considered an adverse employment action for purposes of FEHA. (See *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1380 ["adverse employment action[s]" include " 'ultimate' employment acts, such as hiring, firing, [and] demotion" as well as "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career advancement"].) We do not think this fact indicates a lack of discriminatory motive.

In sum, although Defendants met their initial burden of establishing a legitimate, nondiscriminatory reason for Mendoza's termination, Mendoza met her responsive burden of establishing a triable issue of fact whether defendants' asserted reason was pretextual. Given Shared Services' expressly discriminatory policy and the circumstances of Mendoza's termination, a reasonable factfinder could conclude that she was actually terminated for discriminatory reasons.

C.      *Purported Affirmative Defenses*

      1.      *Standard of Review*

Mendoza claims we should not consider defendants' religious-corporation and joint-employer arguments because the trial court did not change its disposition of these issues when ruling on the motion for new trial and the original order denying summary judgment on these defenses is not appealable. This argument has some appeal as defendants do contend "[t]he trial court erred as a matter of law in denying defendants' [motion for

17

summary judgment] on [these] two affirmative defenses." But a nonappealing respondent may seek review of prior interim orders for the purpose of demonstrating that the appellant was not prejudiced by the claimed errors. (§ 906.) We will therefore assume it is appropriate to address defendants' arguments on these defenses as part of our independent review of the trial court's original summary judgment order.

For several reasons, however, we do not think it is appropriate to apply the heightened standard of review outlined in *Oakland Raiders* for these issues. (*Oakland Raiders, supra*, 41 Cal.4th at p. 641.) The motion for new trial did not affect the disposition of these issues, and the trial court issued a reasoned order in connection with its initial summary judgment ruling. The lack of a new trial order reiterating those reasons does not undermine the purposes of section 657: " 'to promote judicial deliberation before judicial action,' " and " 'to make the right to appeal from the order more meaningful.' " (*Oakland Raiders,* at pp. 636–637.) The trial court deliberated in connection with the summary judgment order, which also apprised defendants (and this court) of the trial court's reasoning. Accordingly, we review these issues de novo without placing the burdens of production or persuasion on Mendoza. (See *Aguilar, supra*, 25 Cal.4th at p. 860.)

2.      *Religious-Corporation Exemption for Shared Services*

Defendants claim Shared Services is exempt from FEHA because it is a not-for-profit religious corporation and thus not an "employer" for purposes of FEHA. (See Gov. Code, § 12926, subd. (d) [excluding from FEHA definition of "employer" a "religious association or corporation not organized for private profit"].) But there is an exception to this religious-corporation exemption: "Notwithstanding subdivision (d) of Section 12926, . . . 'employer' includes a religious corporation or association with respect to persons employed by the

18

religious association or corporation to perform duties, other than religious duties, *at a health care facility operated by the religious association or corporation* for the provision of health care that is not restricted to adherents of the religion that established the association or corporation." (Gov. Code, § 12926.2, subd. (c), italics added.) It is undisputed that Mendoza "perform[ed] duties . . . *at*" the Murrieta Medical Center campus, but the parties dispute whether Shared Services "operated" the Murrieta Medical Center. (*Ibid.*)

The Legislature has not defined the term "operated" as used in section 12926.2, subdivision (c), but the first step in statutory interpretation is always to "examine the statutory language, giving it a plain and commonsense meaning." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) To "operate" a facility means to conduct or to manage the facility's affairs. (See, e.g., Black's Law Dict. (12th ed. 2024) p. 1312, col. 2 [definition 2: "To manage or conduct the affairs of; to direct or superintend <to operate a business>"]; Merriam-Webster.com Dict., Merriam-Webster, (<https://www.merriam-webster.com/dictionary/operate/> [as of July 15, 2025] archived at https://perma.cc/QT2E-GEG5.) ["to put or keep in operation"].) On the basis of this record, a reasonable trier of fact could conclude that Shared Services jointly "operate[s]" Murietta Medical Center under the plain meaning of the term.

According to Lund, departments from all the Loma Linda hospital entities were moved under Shared Services so all the entities could be coordinated with the main hospital's "operations." Shared Services "provides administrative services and infrastructure to the Loma Linda University Health entities," including Murietta Medical Center. Shared Services' "administrative and infrastructure services include but are not limited to

19

human resources management, payroll, risk management, internal audit, office of general counsel, supply chain, security and parking and transportation." This evidence suggests that Shared Services exists solely to support Loma Linda University Health system entities and that Murietta Medical Center could not operate without the functions provided by Shared Services. A reasonable factfinder could thus infer that Shared Services jointly "operated" Murietta Medical Center.

To the extent defendants contend that Shared Services did not operate Murietta Medical Center because it "is not a hospital, doctor's office, medical clinic, or surgical center," we think this would be an unduly narrow interpretation not warranted by the plain language of the statute. The statute specifies that the religious organization must "operate[ ]" a health care facility, not that the religious organization must *be* a health care facility. In addition, the provisions of FEHA are to be liberally construed to provide effective remedies to eliminate prohibited discriminatory practices. (Gov. Code, §§ 12920 & 12993, subd. (a).) We see no reason to restrict the plain meaning of "operate[ ]" in a manner that would exclude an employee who worked at a health care facility and for an organization that provides core operational functions to that facility.

3. *Murietta Medical Center as a Joint Employer*

Defendants also claim Murietta Medical Center should be dismissed because it was not Mendoza's employer at the time of her termination, while Mendoza contends that Murietta Medical Center was a joint employer. " 'There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze "myriad facts surrounding the employment relationship in question." ' " (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124–125 (*Vernon*).) "[T]he precise contours of an

20

employment relationship can only be established by a careful factual inquiry." (*Id.* at p. 125.) Although no factor is determinative, "the extent of the defendant's right to control the means and manner of the workers' performance is the most important." (*Ibid.*)

Defendants argue that Mendoza "was terminated from" Murietta Medical Center and hired as a director of purchasing by Shared Services in February 2018, that Lund (a Shared Services employee) hired her, "that [Shared Services] compensated her and set her wages," and that Shared Services"—through Lund—separated her." Indeed, it seems Murietta Medical Center was not responsible for "payment of [Mendoza's] salary or other employment benefits and Social Security taxes," and did not have the "discretion to determine the amount of compensation [she] earned." (*Vernon, supra,* 116 Cal.App.4th at p. 125.)

But there is evidence that Murietta Medical Center did have at least some "authority . . . to hire, transfer, promote, discipline or discharge" Mendoza and "authority to establish work . . . assignments." (*Vernon, supra,* 116 Cal.App.4th at p. 125.) For example, when Lund was asked if he "need[ed] to get approval from anyone at Murrieta" Medical Center, he testified that he "ran it past Peter Baker and Alan Soderblom." Baker, then the "top executive" at Murietta Medical Center testified that he "reviewed" the decision to terminate Mendoza "with" Lund. Baker also testified that Shared Services "employ[s] the individuals, and we[, Murietta Medical Center,] have our arrangements with them," "[a]nd we hold them to performance as a shared service employee and a shared service program. We hold them to typically standards that we agree on."

Several other factors further suggest that Murrieta Medical Center could be considered a joint employer, including (1) "the location where

21

[Mendoza's] work [was] performed"—the Murietta Medical Center campus; (2) that Mendoza's "work [was] part of [Murietta Medical Center's] regular business operations"; and (3) that Mendoza had been employed by Murietta Medical Center for seven years and by Shared Services for only a few months. (*Vernon, supra*, 116 Cal.App.4th at p. 125.)  Given the mixed evidence, determining whether Murrieta Medical Center is a joint employer requires a factual inquiry not appropriate for resolution on summary judgment.  (*Ibid.*)

DISPOSITION

The trial court's order is affirmed.  Mendoza shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.


22